[Civ. No. 19252. Third Dist. Dec. 15, 1980.]

DAVID WILLSON, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

**COUNSEL**

Robert D. Peterson, Rowland & Parker and Philip E. Callis for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Corinne Lee Murphy, Deputy Attorney General, for Defendants and Respondents.

OPINION

PUGLIA, P. J.—Plaintiff Willson was a permanent civil service employee engaged as a building maintenance worker with defendant Department of General Services in Sacramento. He was absent without leave from his employment on March 30 and 31, and April 3 through 7, 1978. During this period plaintiff called in "sick" on at least three occasions; in fact he had gone to San Jose to salvage, for his own private purposes, $7,000 to $10,000 worth of free lumber. He admitted the true reason for his absence to his supervisor on April 7, 1978.

In a letter dated April 10, 1978, the Department of General Services notified plaintiff that effective March 29, 1978, he was separated from his employment because of his absence without leave for five consecutive working days; this action was taken pursuant to the automatic resignation provision of Government Code section 19503. (All subsequent statutory references are to sections of the Government Code.)

Plaintiff appealed to defendant State Personnel Board (Board). A hearing was held and on June 8, 1978, the Board adopted the decision of its hearing officer; it found plaintiff "had not made a satisfactory explanation of the reason for his absence" or "for his failure to obtain leave to cover the full period of his absence." The Board denied reinstatement.

On May 14, 1979, plaintiff filed the instant proceeding in superior court seeking a writ of mandate to set aside the Board's decision and to reinstate his employment with back pay. The trial court found the automatic resignation provision of section 19503 constitutional as applied to plaintiff and denied the petition. This appeal followed.

I

■ Central to plaintiff's appeal is the contention that he was severed from permanent civil service employment in violation of the due process guarantees of the federal and state Constitutions. Relying on *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], plaintiff contends he should have been accorded certain procedural rights prior to his severance from civil service. For the reasons which follow, we do not agree.

Section 19503 provides for the automatic resignation of an employee from state service on the happening of certain specified events. That section apprises the employee of the precise conduct on his part which will trigger the mandatory consequences in the following language: "Absence, without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, as of the last date on which the employee worked."[1]

When plaintiff voluntarily absented himself from work without leave for more than five consecutive days, such self-abdicating action triggered the constructive resignation provision. (See *Baker v. Wadsworth* (1970) 6 Cal.App.3d 253, 262-263 [85 Cal.Rptr. 880].) It was the plaintiff's own act, not the state's, which severed the employment relationship. Consequently, there was no governmental action which amounted to a "deprivation" or "taking" of property for due process purposes. (Cf. *Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 560 [150 Cal.Rptr. 129, 586 P.2d 162].)

To be contrasted with the constructive resignation provision of section 19503 are punitive actions to remove an employee for cause pursuant to section 19570 et seq. of the Civil Service Act. The causes for which an employee may be removed or otherwise disciplined in a punitive action are broadly defined in the statute. (§ 19572.) This lack of specific definition and the resulting infinite variety of factual situations which may justify removal or discipline obviously give rise to problems of notice and essential fairness to an employee. (See *Arnett v. Kennedy* (1974) 416 U.S. 134, 161 [40 L.Ed.2d 15, 37, 94 S.Ct. 1633].)

It was in the context of state action to remove a permanent employee for cause that the Supreme Court announced the necessity of prere-

---

[1] At the time of plaintiff's termination, section 19503 further provided: "A permanent or probationary employee may within 90 days of the effective date of such separation, file a written request with the board for reinstatement; provided, that if the appointing power has notified the employee of his automatic resignation, any request for reinstatement must be made in writing and filed within 15 days of the service of notice of separation. Service of notice shall be made as provided in Section 18575 and is complete on mailing. Reinstatement may be granted only if the employee makes a satisfactory explanation to the board as to the cause of his absence and his failure to obtain leave therefor, and the board finds that he is ready, able, and willing to resume the discharge of the duties of his position or, if not, that he has obtained the consent of his appointing power to a leave of absence to commence upon reinstatement.

"An employee so reinstated shall not be paid salary for the period of his absence or separation or for any portion thereof."

(A subsequent amendment to the section (Stats. 1978, ch. 776, § 114) added a subd. (b); the amendment does not affect the present litigation.)

moval procedural safeguards under the federal and state due process clauses. (*Skelly, supra,* 15 Cal.3d at pp. 202-203, 216.) The *Skelly* court relied heavily on *Arnett* v. *Kennedy, supra,* 416 U.S. 134 [40 L.Ed.2d 15], holding: "It is clear that due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. . . . As a minimum, [however,] preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Skelly, supra,* 15 Cal.3d at p. 215.)

Recent decisions of the United States Supreme Court subsequent to *Arnett* v. *Kennedy, supra,* 416 U.S. 134 [40 L.Ed.2d 15], indicate that in certain narrowly defined circumstances, the state may, consistent with the imperatives of due process, impair even fundamental private interests without first affording a hearing. In *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893], the high court has enumerated the factors to be considered in analyzing the extent to which due process requires notice and hearing prior to the deprivation of some type of property interest: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (P. 335 [47 L.Ed.2d, p. 33].)

In *Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723], the United States Supreme Court upheld the constitutional adequacy of an Illinois regulation which authorized the Secretary of State to revoke a driver's license without preliminary hearing where the license had been suspended three times within a ten-year period. The regulation provided for a full evidentiary hearing *after* revocation. The high court noted that the regulation set out a narrowly defined standard which gave precise notice of conduct that would be sanctioned (*Dixon* v. *Love, supra,* at p. 115 [52 L.Ed.2d at pp. 181-182]); moreover, the secretary's revocation decisions under the regulation were "largely automatic" (*id.,* at p. 113 [52 L.Ed.2d at p. 180]). Applying the specific factors identified in *Mathews* v. *Eldridge, supra,* 424 U.S. 319, the court stated: "Since [the licensee] does not dispute the factual basis for

the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations. Such an appearance might make the licensee feel that he has received more personal attention, but it would not serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations." (Fn. omitted; 431 U.S., at pp. 113-114 [52 L.Ed.2d, at p. 181].)[2]

Applying the foregoing principles, we conclude that even if plaintiff's constructive resignation constituted governmental action for due process purposes, procedural fairness was not affronted by the lack of safeguards prior to plaintiff's resignation. Balancing the private and governmental interests involved (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 268-269 [158 Cal.Rptr. 316, 599 P.2d 622]; *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 434 [166 Cal.Rptr. 149, 613 P.2d 210]), we are satisfied the preremoval safeguards enumerated in *Skelly* would have little, if any, value in the present context. Though the property interest at stake is substantial, we have already noted that section 19503 gives fair notice of exactly when, why and how an employee constructively resigns his position; moreover, plaintiff does not dispute that he engaged in the conduct causing his resignation, and in the nature of such matters, conduct giving rise to automatic resignation is rarely, if ever, susceptible to factual dispute. Thus the risk of erroneous applications of the statute is nominal and would in any event scarcely be diminished by provision for preremoval hearing. Furthermore a substantial economic burden would be cast upon the state, and its ability to function would be seriously impaired if its employees could absent themselves without leave for long periods of time and the state were required to give them notice and opportunity to respond before being able to fill vacant positions.

For the foregoing reasons we consider that plaintiff received all the procedural rights he was due by the opportunity afforded subsequent to his automatic resignation to explain "the cause of his absence and his failure to obtain leave therefor" (§ 19503). We note that in that proceeding the Board fully reviewed factors in mitigation of plaintiff's

---

[2]In *Oregon State Penitentiary* v. *Hammer* (1977) 434 U.S. 945 [54 L.Ed.2d 306, 98 S.Ct. 469], the United States Supreme Court indicated that the principles set forth in *Dixon* are applicable to employment situations. (See also *Civil Service Assn.* v. *City and County of San Francisco, supra*, 22 Cal.3d at pp. 561-562, fn. 3.)

absence without leave. (See also *Baker* v. *Wadsworth, supra,* 6 Cal. App.3d at pp. 264-265.)

## II

■ The second prong of plaintiff's attack seems to be leveled at the harshness of automatic resignation as applied to him. He claims the application of section 19503 in his case was an abuse of discretion since the evidence tended only to show that he was a "bit of an entrepreneur" and did not establish that he was "evil or malicious."

As to plaintiff's automatic resignation, an abuse of discretion was impossible since section 19503 is automatic, not discretionary, in application. The appropriate avenue of attack thus would have been against the statute itself on substantive due process grounds. We are satisfied, however, that the Legislature reasonably could have concluded that voluntary absence without leave for five consecutive working days justifies a finding of constructive resignation.

■ As to the subsequent review proceeding accorded plaintiff to mitigate any harshness caused by his automatic resignation, there likewise was no abuse of discretion. Plaintiff had the burden of furnishing satisfactory explanation as to the cause of his absence and his failure to obtain leave; "moonlighting" was not a legitimate excuse for failure to come to work as scheduled.

The judgment is affirmed.

Paras, J., and Finney, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1981.

---

*Assigned by the Chairperson of the Judicial Council.