[Civ. No. 61982. Second Dist., Div. One. Dec. 21, 1981.]

NANCY L. H. CURIA, Plaintiff and Appellant, v. CIVIL SERVICE COMMISSION OF LOS ANGELES COUNTY et al., Defendants and Appellants.

COUNSEL

Charles W. Anshen and Eugene K. Friedman for Plaintiff and Appellant.

John H. Larson, County Counsel, Halvor S. Melom and Joe Ben Hudgens, Deputy County Counsel, for Defendants and Appellants.

OPINION

HANSON (Thaxton), J.—The Los Angeles County Civil Service Commission (hereinafter referred to as the Commission), the Los Angeles

County director of personnel and the department of county engineer facilities (hereinafter referred to as the Department) appeal a judgment granting Nancy Curia a writ of mandate reversing a decision of the Commission denying her petition for reinstatement after her employment was terminated pursuant to section 33 of the Los Angeles Administrative Code Ordinance No. 4099.

Nancy Curia has filed a cross-appeal on the ground that the action of the Department constituted a wrongful discharge without appropriate protection of her constitutional rights.

FACTS

The trial court granted the petition for writ of mandate and ordered a de novo hearing following its review of the proceedings before the hearing officer for the Commission. The record discloses the following facts: Nancy Curia was hired by the Department on July 22, 1970, and in March 1979 she was a real property agent II. Her supervisor, Claus Marx, testified that Ms. Curia's absence to keep a doctor's appointment on March 1, 1979, was authorized. She did not return to work March 2. However, her mother called to advise him that she would not be returning to work for some time because of an asthma condition, that she could not be contacted because she was in isolation, but that she would send him a letter. Marx reported the matter to the personnel officer, Mrs. Grenewetski. On March 8, 1979, he received a handwritten letter from Ms. Curia advising him that pursuant to their earlier discussion she was taking a few weeks' rest on advice of her doctor and she would be back at work on Tuesday, March 27, 1979.[1]

---

[1]*The letter reads as follows:*
"Hi Claus
"Per our conversation this A.M.; I am following the advice of my doctor, Jack Lewis, to take a few weeks off work and recuperate.
"My health has been poor since last November as you know. But lately, I am barely able to function. Now, its either rest or later—a hospital stay.
"My active files are all on the shelf over the auxilary [sic] desk shelf. The Whiteman Airport EIR responses file is also in this group. I have been waiting for the State's package which was waylaid between here and there. I called and they're sending a duplicate set.
"Nothing critical is in the hopper so my absence will not be noticed.
"Please notify payroll to take my sick leave time (100% only) then convert the rest to vacation time I've accrued. I will be back at my desk on Tuesday, March 27. The enclosed yellow sheet is my receipt so please place it in my desk. The doctor's appt card is for Monday, March 26 for a complete physical."

On March 9, 1979, Mrs. Grenewetski wrote Ms. Curia to advise her that, pursuant to the Department's attendance policy which required a doctor's excuse for sick leave exceeding three days, her absence was unauthorized and that she should either return to work by March 14, 1979, or contact Mrs. Grenewetski to obtain the necessary authorization. She was advised that she would otherwise be in jeopardy of being deemed to have resigned her job pursuant to section 33 of the Los Angeles County Administrative Code.[2] This letter was sent by certified mail to Ms. Curia's residence address and also to that of her former husband.

By March 14 there was no response but Mrs. Grenewetski suggested they give her an additional week. By March 21 Ms. Curia had made no response. After discussion with Marx and Jack Hibbs, chief of the section in which Ms. Curia was employed, Mrs. Grenewetski sent a letter that same day advising her that she was deemed to have resigned pursuant to section 33 and that she might be reinstated if there was good cause for her absence. Ms. Curia on March 27 visited Mrs. Grenewetski at her office and was told to submit her request for reinstatement in writing including a verification from Dr. Lewis and it would be considered on the basis of what was submitted.

By letter dated March 28 plaintiff responded to Mrs. Grenewetski's letters of March 9 and 21. She said that she had not received these letters because she had been out of town until March 27. She stated that

---

[2]Section 33, in pertinent part, provides: "A county officer or employee resigns in any of the following ways:

"(a) A county officer or employee who without prior authorization is absent or fails to discharge his regularly assigned duties for either three (3) consecutive regular working days or for two (2) consecutive regularly scheduled on-duty shifts, whichever may be applicable, shall be deemed to have resigned effective as of the end of the day of which he last performed any of the duties of his position; provided, however, an officer or employee shall not be deemed to have so resigned if he resumes the performance of his regular working day or on-duty shift following the expiration of the aforementioned period of absence or failure to discharge duties.

"Within twenty (20) calendar days after the effective date of such resignation, any officer or employee who has resigned pursuant to this subsection (a) may file with his appointing officer a written request for reinstatement. The appointing officer may reinstate such officer or employee if such appointing officer finds that there is good cause for the absence or failure to perform duties such as bona fide illness, injury, or similar circumstances beyond the control of the officer or employee, and that such officer or employee is ready and able to resume the discharge of his duties. In the event an individual is so reinstated, such reinstatement shall constitute a retroactive leave of absence."

her doctor, Jack Lewis, had advised a rest in peaceful surroundings to relieve her asthma and that her leave had been authorized by both Marx and Hibbs. She said she had tried to call Marx but couldn't get through and therefore had her mother do so, and she asked for reinstatement because her absence was due to illness.[3] Attached was a letter from Dr. Lewis bearing the date of her return to work, March 27, 1979, stating he had seen plaintiff March 2 and that due to her asthma he had told her she was in no condition to work.

Mrs. Grenewetski on April 3, 1979, contacted Dr. Lewis who said he had not specifically told Ms. Curia to take the time off or to take a rest in peaceful surroundings. Marx and Hibbs each denied having given permission or authorizing her absence except for the March 2 medical appointment. Mrs. Grenewetski then telephoned Ms. Curia to tell her that a meeting was scheduled for April 9, that there appeared to be discrepancies in her story and that she could explain those at the meeting.

When the meeting was held April 9, plaintiff appeared with her representative, Sam McNeal. Marx, Hibbs and Mrs. Grenewetski were also present. When asked to explain why she reported that Dr. Lewis authorized her extended absence, plaintiff stated only that she was ill and had been in isolation in Texas.

By letter of April 13, Mrs. Grenewetski notified Ms. Curia that she had not presented sufficient justification for her absence without authorization, that the discrepancies had not been clarified and that "the Department does not wish to offer you reinstatement rights at this time."

Ms. Curia by letter of April 23 protested that decision and repeated her request for reinstatement. The demand was denied by letter dated May 8 in which Mrs. Grenewetski reiterated the reasons for the Department's actions and offered Ms. Curia another week to submit additional documentation.

---

[3]The March 28 letter states, in pertinent part, as follows: "On March 2, 1979, I saw my physician, Jack J. Lewis, M.D., and he advised me that I was overworked and that only a rest in peaceful surroundings would relieve my asthma.... The way he put it was that I was in no condition to work. (See enclosed verification letter from Dr. Lewis).

"Immediately afterwards I tried to call my supervisor Mr. Claus Marx, but the Revenue Property Division's phones were out of order so I had my mother call for me later that day and say that I would be out sick for about two weeks."

Ms. Curia this time responded by telegram on May 14, 1979, as follows: "Reference your letter postmarked May 10, all sick leave oked by Claus Marx 'take as much time as you need to get well.' No prior Dr.'s excuse requested. Do not know what other discrepancies you mean." Mrs. Grenewetski replied by letter of May 16 denying the request for reinstatement and advising plaintiff of her right to appeal to the Commission.

Ms. Curia had in fact filed an appeal to the Commission on April 26, 1979. With her appeal she included a letter from Dr. Ira Sharlip which was not previously supplied to the Department. Dr. Sharlip stated: "This letter is to inform you that Nancy Curia was treated in a clinic at bedrest and on medication from March 5 to March 21, 1979." That letter eventually came to the attention of Mrs. Grenewetski, who in August 1979 contacted Dr. Sharlip. His October 22, 1979, written response to specific questions was somewhat equivocal in that he stated he was not Ms. Curia's treating physician, and hence could not say what the nature of her illness was; he did not give the address of the clinic and allegedly did not know whether Ms. Curia required total isolation or the name of Dr. Lewis.

A prehearing conference was held August 16, 1979. Hyman Danoff, one of the Commission's hearing officers, considered the exhibits only on plaintiff's motion for summary decision. He found the action of the Department to be arbitrary and capricious, and he recommended her reinstatement. The Commission on September 5, 1979, declined to accept this recommendation and remanded the matter for a full hearing before a new hearing officer.

By letter of September 8, 1979, Ms. Curia requested that the hearing be conducted under the rules relating to discharges. The Commission by letter of September 18 explained that this request was denied and that the issue at the hearing would be whether operative facts existed to support Ms. Curia's implied resignation. Thereupon plaintiff filed with the court on September 18, 1979, a petition for writ of mandate to set aside the September 5 decision declining to accept Danoff's recommendation. This petition was denied on the ground that Ms. Curia had failed to exhaust her administrative remedies.

A full hearing was scheduled October 29, 1979, before hearing officer Louis Zigman. Ms. Curia on October 24, 1979, filed a motion that the hearing be conducted as a discharge proceeding. On the date of the

hearing Zigman reserved ruling on the motion but required the Department to proceed first with its evidence.

At the conclusion of testimony by several witnesses the Department indicated its intent to call plaintiff, who had left the proceedings due to illness, to testify pursuant to civil service rule 5.12. At that point the hearing officer denied Ms. Curia's motion to have the proceedings conducted as a discharge hearing indicating that he was following the Commission's previous decision. Counsel for Ms. Curia argued that the Department had not made a sufficient showing to invoke section 33. The hearing officer pointed out that this was a question of proof and if the evidence should establish that Ms. Curia had complied with the appropriate procedures, he would find the Department's action under section 33 was invalid.

On the morning of the second day of the hearing plaintiff's counsel reiterated argument that the denial of a discharge hearing to Ms. Curia deprived her of the constitutional rights of due process, equal protection, and privacy. He further declared that to go forward with the hearing "once the hearing officer has decided he is not free to rule upon the evidence" was to further endanger his client's rights since in a discharge hearing she would have the privilege not to testify, and expressed the intent to leave with his client. The hearing officer remonstrated that he was still in the midst of hearing evidence and advised the parties that the hearing would be continued in their absence. Ms. Curia, who was not under subpoena, then left with her attorney. The Department resumed presenting the testimony of Dr. Jack Lewis, Mrs. Grenewetski, and Frank Garrison (another Department employee) in Ms. Curia's absence.

The hearing officer in his report concluded that the Department demonstrated that section 33 was properly invoked. He found that Ms. Curia was absent from work more than three consecutive working days without prior authorization; and that she did not demonstrate grounds for reinstatement under section 33 since she did not present a proper explanation for her absence or show that it was due to circumstances beyond her control. He further found that the Department had the right to verification of illness and that Ms. Curia's explanation contained discrepancies of a material nature. He found in addition that she failed to explain these despite the Commission's ruling that the matter would be treated as a section 33 proceeding to which civil service rule 7.2 (constructive resignation) applies rather than a discharge proceeding under

charter section 112. As a consequence, the burden of proof properly reposed on the employee because the facts were peculiarly within her knowledge. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 760 [63 Cal.Rptr. 689, 433 P.2d 697].)

On December 21, 1979, the Commission notified the parties of its proposed decision to accept the findings, conclusion and recommendation of its hearing officer. Thereafter, by letter dated January 5, 1980, Dr. Sharlip sent another letter to the Department purporting to explain his earlier responses to the questions the Department had presented to him. He therein stated that he had arranged plaintiff's admission to a hospital at no fee and that she had been treated by him. This letter Mrs. Grenewetski forwarded to the Commission which sent it to the hearing officer for review and a decision as to whether this new information was sufficient for him to change his recommendation.

The hearing officer by letter dated January 23, 1980, replied that as evidence after the close of the hearing Dr. Sharlip's letter would not normally be properly received absent agreement of both parties. He further stated that "this letter, by itself, is not sufficient for me to change my decision and recommendation."

On February 6, 1980, the Commission overruled plaintiff's objections thereto and formally adopted the findings and conclusions of its hearing officer.

Ms. Curia filed a second petition for writ of mandate with the superior court. Hearing was conducted on June 6, 1980, and the trial court ordered the case remanded for a hearing de novo. The trial court entered its formal findings and conclusions and final judgment on July 15, 1980.

The court found that plaintiff was deemed to have impliedly resigned her position with the Department pursuant to section 33 due to her alleged unauthorized absence from March 2 to March 26, 1979; that she timely requested and was granted a hearing on reinstatement pursuant to civil service rule 19.13; that rule 19.13 provides that the employee requesting the hearing "shall have the burden of proving the facts substantiating his allegations"; that the factual issues were (1) whether Ms. Curia was absent without proper authorization, and (2) if so, whether good cause could be shown to excuse such absence; that a hearing was conducted October 29 and 30, 1979, before a hearing officer

for the Commission; that notwithstanding that burden of proof under rule 19.13 rested on Ms. Curia the hearing officer directed the Department to proceed first with the evidence; that the Department called plaintiff as a witness and she refused to take the stand and quit the hearing with her attorney despite the hearing officer's admonition that the hearing would proceed; that having quit the hearing Ms. Curia "presented no competent evidence that her absence had been authorized or, in the alternative, that good cause sufficient to excuse an unauthorized absence existed"; that the Commission on January 9, 1980, adopted the hearing officer's report concluding that plaintiff's absence was unauthorized and that the Department had proceeded correctly under section 33.

The trial court concluded that in proceedings arising under section 33 "the initial burden of proof—notwithstanding civil service rule 19.13 (see fn. 4, *infra*)—is upon the employee's department in instances where the employee disputes whether the absence in question was, in fact, unauthorized." Accordingly, the court remanded the case to the Commission for a hearing de novo "consistent with burden and order of proof as established by this Court."

## ISSUES

The county on appeal contends (1) that the trial court exceeded its jurisdiction in reordering the burden of proof under rule 19.13; and (2) that remand is not necessary in light of the trial court's finding that Ms. Curia failed to present any competent evidence that her absence was authorized or that good cause existed sufficient to excuse an unauthorized absence.

Plaintiff Curia on cross-appeal contends (1) that the sending of a letter to her home while she was away did not constitute sufficient notice that her absence from work would be deemed resignation; (2) that the trial court failed to exercise its independent judgment on the evidence as required; and (3) that section 33 both on its face and as applied violates her constitutional due process rights.

## DISCUSSION

 The initial proceeding in this case was a hearing on plaintiff's petition for reinstatement following the Department's decision that she

should be deemed to have resigned her position due to her alleged unauthorized absence of over three days pursuant to section 33. Rule 19.13[4] of the Los Angeles Civil Service Commission, adopted in 1973, implements section 33 and provides that "[t]he employee requesting such a hearing shall have the burden of proving the facts substantiating his allegations."

Plaintiff in her petition sought review of the decision of the Department on the ground that it wrongfully or erroneously concluded that her absence was unauthorized since (a) her absence was authorized by her superiors; (b) she provided the Department appropriate notice of the reason for her absence and the anticipated date of her return; and (c) she was given no reasonable notice or warning that the Department would consider her absence to be unauthorized if she failed to return by a time two weeks prior to the date supplied by her letter. She claimed that the real question was whether the conduct of the Department constituted a discharge without cause. She raised in a timely manner issues relating to due process and burden of proof before the hearing officer who believed under the applicable rules he had no discretion with respect to burden of proof.

It is conceded by both parties that the sole issues before the hearing officer on a section 33 hearing are (1) was there an unauthorized absence of more than three days and (2) if so, was there justification for the unauthorized absence. With respect to the first issue the trial court entered a conclusion of law as follows: "In proceedings under Section 33 of the Los Angeles County Administrative Code, the initial burden of proof—notwithstanding Civil Service Rule 19.13—is upon the employee's department in instances where the employee disputes whether the absence in question was, in fact, unauthorized." Accordingly, the court provided: "*It is further ordered* that the first issue to be considered there shall be whether Petitioner [Curia] gave proper notice for her ab-

---

[4]Rule 19.13 states: "An employee who resigns by absence or failure to discharge his duties pursuant to Section 33 of the Administrative Code of the County of Los Angeles may request a hearing before the Commission in accordance with Rule 5 by setting forth in writing sufficient facts to substantiate his allegations that his implied resignation was obtained through fraud, duress, or undue influence by the appointing power of the County, or that his absence or failure to discharge his regularly assigned duties was for reasons beyond his control. The employee requesting such a hearing shall have the burden of proving the facts substantiating his allegations. Nothing in this Rule shall be deemed to prevent an appointing power from suspending, discharging, reducing, or otherwise disciplining an employee on account of unauthorized absences."

sence, and that the burden of proof in that issue shall be on Respondent Department of County Engineer Facilities."

The prior cases which have been drawn to our attention have not confronted the issue raised on this appeal because generally the facts relative to unauthorized absences are not disputed by the employee. In *Baker* v. *Wadsworth* (1970) 6 Cal.App.3d 253 [85 Cal.Rptr. 880], the employees concededly refused to work based on matters relevant to a strike. In *Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312 [169 Cal.Rptr. 823], the employee admitted that although he called in sick he had in fact gone out of town to salvage some free lumber for his private interest. There could in neither case be any question that the absences were without leave. Therefore, under applicable statutory or civil service rules the unauthorized absences could be deemed resignation and the sole issue at these hearings was one of the potential defense of justification, on which the employee had the burden not only of proof but also of going forward with the evidence. In fact, the language of section 33 does not contemplate that the determination that an absence was not authorized would be open to question, thus permitting a summary and unilateral determination by the employer as to what facts substantiate an implied resignation by the employee.

It is also significant that in the *Willson* and *Baker* cases the employees who were deemed to have resigned acknowledged that they received fair, reasonable and adequate notice that their conduct would be so construed by their respective employers. In the *Baker* decision the court found that the due process requirements of reasonable notice and a reasonable opportunity to be heard were both clearly satisfied under the circumstances. However, since these cases are distinguishable in some salient features, as we have pointed out, the determinations that due process requirements were there satisfied by adequate notice and a subsequent opportunity to explain have no application in the present case.

We are here confronted with a situation where an employee disputes the allegations of her employer that her absence was not authorized and argues that she was deprived of due process because of absence of reasonable notice and a summary decision that her conduct constituted an implied resignation. It is beyond dispute that this civil service employee had acquired a valuable property interest in her employment. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].) The unilateral action of the Department in concluding that she must be deemed to have resigned, despite the conflicting views of the

employee, constituted a termination of her employment of an unduly summary nature.

Nancy Curia in the case at bench has alleged, both in her petition for reinstatement and her petition for writ of mandate, that she never entertained an intent to resign her job, and that she believed in good faith that she had substantially fulfilled the requirements of the written attendance policy of the Department.[5] She made prior arrangements to take time off March 2, 1979, to see Dr. Lewis; she called in early that day to tell Marx she was too sick with asthma to work and she was going to see the doctor; after she visited the doctor, she had her mother call Marx to report that Ms. Curia would have to rest in isolation a couple of weeks until she was over the asthma; and she wrote a letter of explanation to Marx herself explaining her need to take sick leave and providing a definite return to work date of March 27, 1979 (see fn. 1, *ante*). Upon her return from sick leave she presented a medical certificate from Dr. Lewis in compliance with the attendance policy and the Los Angeles County Salary Ordinance section 250.[6] She was not under the attendance policy required to call in any more once she had given a definite date for her return to work. It does not appear that the registered letter of notice that Ms. Curia would be deemed to have resigned sent pursuant to section 33.1 constituted adequate or satisfactory notice to her since she believed her absence to be authorized, notified the Department she would be out of contact, and gave them a definite date of return.

The threshold issue in this case is whether section 33 was appropriately applied in light of Ms. Curia's claims, substantiated by

_____

[5] The written attendance policy of the Department—Notification of Absence—provides as follows: "To enable supervisors to plan the day's activities, employees caused to be absent must call their supervisors within the first half hour of the beginning of the work day....

"If an employee is unable to reach his/her immediate supervisor, he/she is responsible for contacting a designated alternate. An employee who has a friend or family member report his/her absence, must personally call the supervisor the same day.

"The employee must inform the immediate supervisor of the reason for his/her absence and when he/she expects to return to work. If the employee states that he or she will be out until a certain date, the employee is not required to call in again until that date."

[6] Los Angeles County Salary Ordinance section 250—Proof of Absence—provides as follows: "An employee absent due to sickness, injury, pregnancy, quarantine, non-emergency rendered or dental care ... may be required before such absence is authorized or payment is made, to furnish a doctor's certificate or other proof satisfactory to his department head that his absence was due to such causes."

documentary evidence, that she had no intention of resigning, that she explained her absence, and that the facts are not consistent with a finding of implied resignation in view of her compliance or substantial compliance with the Department's attendance policy. Certainly the entire tenor of her initial letter dated March 2, 1979, with the salutation "Hi Claus" (see fn. 1, *ante*) does not suggest an intent to resign. The reasonable inference established by this letter is that Ms. Curia had a good relationship with her supervisor, that she had discussed sick leave with him, that she was aware of the fact that she had been ill and needed to take some time off. It does not imply a lack of cooperation with the Department on Ms. Curia's part since she specifically refers to the method of dealing with her absence and her consideration of the work in process.

In her subsequent letter dated March 28, 1979 (see fn. 3, *ante*), she responds to the tardily received letters from the Department advising her that her absence would be deemed a resignation, explaining why she failed to make a timely response, elaborating on the fact that both she and her mother called the Department on March 2, and indicating that both Marx and Hibbs had told her that if she needed sick leave all she had to do was take it and notify one of her supervisors at the time. Upon her return she supplied the Department with medical certification as to her illness, including the statement of Dr. Lewis that she was in no condition to work.

Under the circumstances, it is difficult to see what more might reasonably have been required of her under the applicable attendance policy of the Department unless it might have been an additional personal phone call within the three-day period. It was not unreasonable for Ms. Curia to entertain the good faith belief that she had fulfilled these technical requirements by her previous conversation with Marx and Hibbs, her advice to Marx on March 1, her effort to contact him on March 2, and her mother's call to him later on March 2.

The Department argues that the due process issue relative to section 33 has previously been resolved in its favor, relying on *Willson v. State Personnel Bd.* (1980) 113 Cal.App.3d 312 [169 Cal.Rptr. 823]. In that decision the court upheld against due process attack the constitutionality of the automatic resignation provision of Government Code section 19503, in principal similar to section 33. In that case the employee admitted that on several occasions he had called in "sick" when he had in

fact gone out of town to salvage for private purposes a quantity of free lumber. The court concluded that the employee received all the procedural rights he was due by the opportunity afforded subsequent to his automatic resignation to explain the cause of his absence and rejected his argument that he was entitled to greater procedural safeguards prior to his severance from civil service under *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774].

The court in the *Willson* case was not, however, confronted with the issue presented by Ms. Curia on this appeal. Conceding that the property interest of the employee in his civil service job was substantial, the court nonetheless concluded due process was satisfied, relying on a balancing of interests and the fact that there was no conflict in the facts establishing his implied resignation. The court notably observed: "[P]laintiff does not dispute that he engaged in the conduct causing his resignation, and in the nature of such matters, conduct giving rise to automatic resignation is rarely, if ever, susceptible to factual dispute. Thus the risk of erroneous applications of the statute is nominal and would in any event scarcely be diminished by provision for preremoval hearing. . . ." (*Willson* v. *State Personnel Bd., supra,* 113 Cal.App.3d 312, 317.) Clearly this logic is inapplicable in the present case.

The California Supreme Court in the *Skelly* case reviewed the requirements of due process in the context of civil service employment termination and concluded that an employee must be accorded certain procedural rights before disciplinary action of the governmental agency becomes effective. It found the California statutes inadequate and a violation of the Fifth and Fourteenth Amendments to the federal Constitution and article I, sections 7 and 15, of the California Constitution, in permitting termination by simply notifying the employee (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 215), thus resulting in a temporary deprivation of property pending hearing in the event the employee was wrongfully disciplined. The logic of the *Skelly* decision is persuasive in the context of section 33 under the circumstances presented by the case at bench where the employee challenges the factual determination that her absence was not authorized.

The *Skelly* decision considered and reviewed with care the conflicting opinions of the United States Supreme Court justices in *Arnett* v. *Kennedy* (1974) 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633]. There six

members of the court, relying on principles set forth in *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701], concluded that due process protections should be accorded the statutory right, a valuable property right, of a nonprobationary federal civil service employee to continue in his position absent cause justifying his dismissal. The *Skelly* court noted that California state employees who attain permanent status have a substantially identical property interest and we see no reason to distinguish the property interest of other governmental employees such as Ms. Curia, a civil service employee of Los Angeles County.

Ultimately, the *Skelly* court observed that in determining what process is due competing interests must be balanced. "[I]n balancing such 'competing interests involved' so as to determine whether a particular procedure permitting a taking of property without a *prior* hearing satisfies due process, the high court has taken into account a number of factors. Of significance among them are the following: whether predeprivation safeguards minimize the risk of error in the initial taking decision, whether the surrounding circumstances necessitate quick action, whether the postdeprivation hearing is sufficiently prompt, whether the interim loss incurred by the person affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful. [Citations.]" (*Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d 194, 209; original italics.)

The balancing test here involves the government's interest in expeditious removal of an employee who has admittedly performed her job competently against the countervailing interest of the affected employee in continued public employment. In view of the property interest involved, it appears that the employee who challenges a determination of the governmental employer that section 33 is applicable to terminate her employment is entitled, at the very least, to place the burden of proof on the employer at a formal evidentiary hearing on the issues. Therefore, despite the terms of section 33, the burden of proof as well as the burden of going forward with the evidence to establish the primary issue, e.g., that the absence was unauthorized, reposes on the employer, in this case the Department, where its position is challenged by the public employee. This principle must be incorporated into section 33 despite the provisions of rule 19.13.

While the narrower issues in *Skelly*, which involved punitive action taken against a permanent civil service employee without a prior hearing on discharge, differ from those presented in the case at bench relating to application of the implied resignation provisions, the outcome is governed in both instances by the same principles of constitutional due process. In the *Skelly* case these principles operated to accord the employee the opportunity for a prior hearing on discharge to "'minimize the risk of error in the initial removal decision.'" (*Skelly v. State Personnel Bd., supra*, 15 Cal.3d 194, 215, quoting *Arnett v. Kennedy, supra*, 416 U.S. at p. 170 [40 L.Ed.2d at p. 42].) Similarly, our decision in the case at bench that the governmental employer bears the burden of proof with respect to the initial issue, whether Ms. Curia's absence from work was without prior authorization, rests on constitutional due process grounds. Therefore, it is clear that, as the trial court concluded, the initial burden of proof despite rule 19.13 reposes on the employer.

In conclusion, where the employee does not admit the facts which constitute an implied resignation, the governmental employer acts at its peril in invoking the summary procedures of section 33 as implemented by rule 19.13. From this conclusion, however, it does not necessarily follow that Ms. Curia is entitled to have the matter treated as a discharge proceeding since in invoking section 33 the Department has indicated that different issues are involved. In fact, the record is replete with admissions that Ms. Curia was a competent and responsible employee and that no grounds for her discharge could be established. On the other hand, Ms. Curia, at least with respect to evidence on the issue of whether she substantially complied with attendance requirements to demonstrate authorization for her absence, enjoys no immunity from testifying. Assuming substantial compliance with attendance requirements is demonstrated, the issue relating to substantiation of medical certificates is moot and will not be reached. As to the adequacy of her justification, should the absence be found to be unauthorized, Ms. Curia, of course, has the burden of proof.

Contrary to the argument of the Department, remand is appropriate under the circumstances to give the parties the opportunity to further develop the evidence in accord with the principles set forth in this opinion. We do not reach the additional issues which Ms. Curia has attempted to raise by cross-appeal.

## DISPOSITION

The judgment is affirmed. Each party shall bear her or its own costs on appeal.

Spencer, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 19, 1982, and the petition of defendants and appellants for a hearing by the Supreme Court was denied March 10, 1982.