[No. AO15409. First Dist., Div. One. Aug. 10, 1983.]

PHILIP ZIKE, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
WILSON RILES, as Superintendent, etc.,
Real Party in Interest and Respondent.

818

COUNSEL

Bernard L. Allamano and Philip E. Callis for Plaintiff and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, N. Eugene Hill, Assistant Attorney General, Harold Teasdale and Matthew P. Boyle, Deputy Attorneys General, for Defendant and Respondent and for Real Party in Interest and Respondent.

OPINION

WEINSTEIN, J.*—This appeal challenges the constitutionality of the "automatic resignation" statute, former Government Code section 19503. That

*Assigned by the Chairperson of the Judicial Council.

statute provides in pertinent part that "Absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, . . ."

Plaintiff is a state employee whose employment was terminated pursuant to section 19503. He was eventually reinstated, but in accordance with the statute he was denied back pay for the period of his separation. Section 19503 declared that an employee reinstated "shall not be paid salary for the period of his absence or separation or any portion thereof."

Plaintiff petitioned for a writ of mandate seeking to compel the State Personnel Board to set aside its decision to deny back salary.[1] The trial court denied the petition. Plaintiff now appeals.

STATEMENT OF FACTS

The plaintiff has been employed by the State of California since 1972. He holds the classification of counselor, Department of Education Special Schools and is employed at the California School for the Deaf as a counselor for children with hearing disorders. As part of his duties as a counselor, plaintiff is required to report to work during the last week of August to prepare and train along with other staff counselors for commencement of the school's fall semester in September.

In 1975, plaintiff reported to school late due to travel in Greece. In 1977, plaintiff again reported to work a few days late due to a delay in his travels in Colorado. In 1978, plaintiff was once again late in reporting for the training period preceding the fall semester, this time due to a delay caused by a family reunion in Florida. On each of these occasions, plaintiff notified his employer, by postcard, that he would be late. In each instance, the employer accepted this form of notification and approved the additional leave retroactively. Plaintiff was never disciplined nor reprimanded for this practice of returning late from summer vacation.

During May of 1979, employees of the school were given oral notification that the return date for that year would be August 27. On July 21, 1979, plaintiff was married and departed for a honeymoon in Italy. At the wedding reception, prior to his departure, plaintiff informed his nominal supervisor, Wesley Roberts, that he would probably not return to the school until September 20. Roberts encouraged plaintiff to take the additional time, although

---

[1]Initially, plaintiff filed his petition in the California Supreme Court, but that court transferred the proceeding to Division Two of this court. Division Two summarily denied the writ (1 Civ. 51926). Plaintiff then refiled his petition in superior court.

he lacked authority to grant such leave, and suggested that plaintiff send the administration a postcard notification of his absence. Additionally, on July 13, 1979, plaintiff had advised two employees in the school's personnel office that he did not expect to return in August. One of these employees was the school's personnel assistant, but neither employee had the authority to grant leaves of absence.

On September 5, 1979, plaintiff's supervisors received a postcard stating that, due to unforeseen circumstances, plaintiff would not return to work until September 11, 1979. Plaintiff arrived at San Francisco airport on September 10, 1979. He was met by a fellow employee who informed plaintiff that his supervisors considered plaintiff's employment to be terminated. Plaintiff returned to the school on September 11, but was prevented from going to work. He was later informed by letter dated September 21 that he had been terminated pursuant to Government Code section 19503. The termination was reflected on plaintiff's personnel record as a resignation with fault. Plaintiff filed an appeal with the State Personnel Board requesting a hearing at the "earliest convenience." Although Zike prosecuted his appeal diligently, a hearing was not held until five months later on February 11, 1980. The hearing officer ordered plaintiff restored to his position effective May 5, 1980. Although noting that plaintiff had abused the leave of absence procedures, the hearing officer held that the school was estopped from applying section 19503 to plaintiff when it had previously accepted his method of notification without comment. On April 30, 1980, the State Personnel Board adopted the hearing officer's decision. Plaintiff was denied his salary (about $10,000) for the entire period between his termination and reinstatement.

## DISCUSSION

Government Code section 19503[2] provides that an employee's five-day absence without leave is an automatic resignation. The absence is deemed an abandonment of the job, evidencing an intent to resign. (See *Baker* v. *Wadsworth* (1970) 6 Cal.App.3d 253, 263 [85 Cal.Rptr. 880].) The statute provides for reinstatement if the employee gives a satisfactory explanation of his absence to the State Personnel Board. Any employee so reinstated, however, is not entitled to back pay.[3] Thus, even where an employee's

---

[2]Effective January 1, 1982, this section was repealed and recodified with no substantive change as Government Code section 19996.2.

[3]The text of section 19503 reads in pertinent part as follows: "(a) *Absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation* from state service, as of the last date on which the employee worked.

"A permanent or probationary employee may within 90 days of the effective date of such separation, file a written request with the board for reinstatement; . . . *Reinstatement may*

absence is ultimately found to be excusable and the employee is reinstated, the employee is in effect punished by the mandatory denial of his back salary.

Plaintiff challenges the constitutionality of section 19503, contending that the statute violates his rights to substantive and procedural due process and equal protection of the laws. Defendant, on the other hand, argues that no violation of due process has occurred and that the constitutionality of section 19503 has been upheld by earlier decisions. (*Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312 [169 Cal.Rptr. 823], app. dism., 454 U.S. 806 [70 L.Ed.2d 75, 102 S.Ct. 79]; *Baker* v. *Wadsworth, supra,* 6 Cal.App.3d 253, 265.)

*Government Code Section 19503 as Applied*
*to Plaintiff Zike Was Unconstitutional*
*Since It Violated His Rights to*
*Procedural Due Process*

Due process protections must be accorded to the valuable property right of a state employee to continue in his position. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [134 Cal.Rptr. 197, 556 P.2d 297].) On the other hand, the government employer has a legitimate interest in expeditious removal of employees who are absent without leave. (*Id.,* at p. 213.)

The *Skelly* court observed that in balancing the competing interests involved to determine whether a *particular* procedure permitting a taking of property without a prior hearing satisfies due process, the court should consider "whether predeprivation safeguards minimize the risk of error in the initial taking decision, whether the surrounding circumstances necessitate quick action, whether the postdeprivation hearing is sufficiently prompt, whether the interim loss incurred by the person affected is substantial, and whether such person will be entitled to adequate compensation in the event the deprivation of his property interest proves to have been wrongful." (*Skelly, supra,* 15 Cal.3d 194 at p. 209.)

Considering all the factors above and for the reasons stated below, we conclude that the application of the automatic resignation statute (§ 19503) to plaintiff Zike violated procedural due process by failing to

---

be granted only if the employee makes a satisfactory explanation to the board as to the cause of his absence and his failure to obtain leave therefor, and the board finds that he is ready, able, and willing to resume the discharge of the duties of his position . . . .

"An employee so reinstated shall not be paid salary for the period of his absence or separation or for any portion thereof." (Italics added.)

As the statute has been recodified in section 19996.2, jurisdiction over the requests for reinstatement is transferred to the department of personnel administration.

provide adequate preremoval safeguards as required by *Skelly* v. *State Personnel Bd.*, *supra*, 15 Cal.3d 194, and the California Constitution, article I, sections 7 and 15.[4]

A review of the administrative record in this case reveals that plaintiff never intended to resign his teaching position which he had held for seven years. Furthermore, the school authorities had no reason to believe he was voluntarily resigning. The record is clear that Zike informed the authorities of his intention to return to school late, on September 11, 1979, after his honeymoon rather than on August 27 when he was scheduled to report for work.

A disputed factual issue surrounding Zike's absence was presented: whether the school authorities by their handling of his request for honeymoon leave and by acquiescing in his previous late arrivals for school years 1975, 1977 and 1978 had authorized his absence in September 1979. The crux of the dispute was whether Zike's absence was an "absence without leave."

Under these circumstances—where a factual dispute regarding the authority for absence is presented—we think Government Code section 19503 should not have been applied. Invoking the summary procedures of the automatic resignation statute in such a situation violated the procedural due process guarantees of *Skelly*. (Cf. *Curia* v. *Civil Service Com.* (1981) 126 Cal.App.3d 994, 996 [179 Cal.Rptr. 476].[5])

■ Because of the obvious harshness of the automatic resignation statute[6] and the absence of procedural due process protections therein (*Skel-*

---

[4]Defendant commendably did not argue in its response that no state action occurred because plaintiff brought the provisions of the automatic resignation statute upon himself. (See *Willson* v. *State Personnel Bd.*, *supra*, 113 Cal.App.3d at p. 315.) Since we believe that the adoption of the automatic resignation statute in itself constitutes sufficient governmental action to invoke due process guarantees, we need not give any further attention to that proposition.

[5]In *Curia* v. *Civil Service Com.*, *supra*, 126 Cal.App.3d 994, the court, while not specifically addressing the need for preremoval safeguards, relied upon *Skelly* in holding that as a matter of constitutional due process, the employer must bear the burden of proof in establishing that the employee's absence was without authorization. In *Curia*, the court found that the unilateral action of the city employer in concluding that an employee must be deemed to have resigned despite conflicting evidence constituted a termination of her employment of an unduly summary nature (*id.*, at pp. 1004-1005). The court concluded that where the employee does not admit the fact which constituted an implied resignation, the employer acts at its peril in invoking the summary procedure of the automatic resignation statute (analogous to Gov. Code, § 19503).

[6]Government Code section 19503 is harsh because its automatic resignation provisions are triggered *without a hearing* and because it eliminates the discretion normally vested in the Personnel Board to provide for back pay if an employee is eventually reinstated for good cause. Contrarily, all punitive actions under Government Code section 19570 et seq. must

ly v. *State Personnel Bd., supra,* 15 Cal.3d 194), we think the use of Government Code section 19503 should be strictly confined to those situations where the absence without leave is admitted[7] (*Willson v. State Personnel Bd., supra,* 113 Cal.App.3d 312, 314; *Baker v. Wadsworth, supra,* 6 Cal.App.3d 253) or those situations where the employer reasonably believes an abandonment has occurred. (Cf., *Curia v. Civil Service Com., supra,* 126 Cal.App.3d 994.)

Of course the employer is not without a remedy when faced with an absent employee. An inexcusable absence is a ground for discipline. (Gov. Code, § 19572, subd. (j).) Discipline can include the entire spectrum of dismissal, demotion, suspension or other punitive action. (*Martin v. State Personnel Board* (1982) 132 Cal.App.3d 460 [183 Cal.Rptr. 295].) But pursuant to the dictates of *Skelly v. State Personnel Bd., supra,* 15 Cal.App.3d 194, the employee is entitled to certain procedural rights *before* the discipline becomes effective.

### *Back Pay Was Improperly Denied*

■ We think the present case should have been initiated as an adverse action pursuant to the punitive section 19572, subdivision (j), "Inexcusable absence without leave" and not as an automatic resignation pursuant to section 19503. The hearing officer and the board also found that the application of section 19503 in this case "was not warranted."

Had an adverse action pretermination hearing been held in this case consistent with *Skelly,* the Zike matter could have been resolved speedily with appropriate disciplinary action (including deduction of pay) and fairness to both sides. Instead, an employee of seven years (whose job performance was highly rated by his supervisors) was terminated without a hearing on a contested issue of unauthorized absence and forced to wait four months before being given a hearing and seven months before reinstatement without possibility of back pay.

---

be preceded by certain pretermination rights, and the Personnel Board can award back pay for such period of time as the board finds the punitive action was improperly in effect. (Gov. Code, § 19584.) Similarly, if an employee resigns voluntarily and the resignation is later set aside, he is entitled to back pay (Gov. Code, § 19502, now § 19996.1). Even in the case of temporary layoffs, the board is vested with discretion to award back pay (Gov. Code, § 19541, now § 19997.14).

[7]In upholding the constitutionality of Government Code section 19503 and determining that the denial of a pretermination hearing did not violate the due process guarantees established in *Skelly,* the *Willson* court determined that the risk of erroneous deprivation of an employee's job was "nominal" because "in the nature of such matters, conduct giving rise to automatic resignation is rarely, if ever, susceptible to factual dispute." (*Willson, supra,* 113 Cal.App.3d 312 at p. 317.) While the plaintiff in *Willson* may not have disputed that he engaged in conduct causing his resignation, this court does not agree that the conduct giving rise to automatic resignation is rarely in dispute or that the risk of error is nominal.

Because plaintiff was eventually accorded a hearing and was reinstated, the error in proceeding under the wrong statute has been largely rectified. Nevertheless, the board erred in denying plaintiff any back pay. We reiterate that pursuant to the due process procedures articulated in *Skelly,* plaintiff should not automatically have been deprived of his salary for the period *prior* to his hearing.

We recognize that the board and the employer may find some disciplinary action including a suspension without pay was justified. They may proceed even at this late date with adverse action against plaintiff if they choose to do so and if plaintiff is accorded his due process rights.[8]

Accordingly, we reverse the judgment and remand the matter with directions to the trial court to issue the writ of mandate compelling the board to pay plaintiff his back salary.

Elkington, Acting P. J., and Newsom, J., concurred.

A petition for a rehearing was denied September 2, 1983, and the petition of all respondents for a hearing by the Supreme Court was denied October 5, 1983.

---

[8]From our review of the administrative record we agree with the Personnel Board that Zike's conduct "was not one to cheer about or win prizes. He took advantage of respondent no less than it appears that respondent took advantage of him." Some deduction of pay may be warranted, but it should *not* be dictated by the arbitrary factor of when the hearing for reinstatement occurred under section 19503 (in this case, more than five months after the employee reported for work).