[No. S004129. Feb. 25, 1991.]

STANLEY COLEMAN, JR., Plaintiff and Appellant, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION, Defendant
and Respondent;
DEPARTMENT OF GENERAL SERVICES, Real Party in Interest
and Respondent.

COUNSEL

Gary P. Reynolds and Robert L. Mueller for Plaintiff and Appellant.

Talmadge R. Jones, Christine A. Bologna, Tamara J. Pierson, Victor J. James II and M. Jeffrey Fine for Defendant and Respondent and for Real Party in Interest and Respondent.

OPINION

**KENNARD, J.—** ■ The abstract words of the due process clause of the United States Constitution have engendered many controversies; but it is beyond dispute that the government may not deprive an individual of life, liberty, or property without notice and opportunity to respond, in a manner "appropriate to the nature of the case." (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652].)

The due process issue we address here is what procedural safeguards, if any, the state must afford a permanent civil service employee when it exercises its statutory authority to treat the employee's unexcused absence from state employment for five consecutive working days as an "automatic resignation." The statutory authority in question is provided by subdivision (a) of Government Code[1] section 19996.2 (hereafter section 19996.2(a) or the AWOL statute).[2] Although the AWOL statute entitles an employee who has been determined to have resigned to seek reinstatement, and to obtain a hearing on the request for reinstatement, it does not entitle the employee to any notice or opportunity to respond before the state's determination of resignation, nor does it provide for a hearing after the resignation takes effect at which the employee may challenge the resignation.

---

[1] Unless indicated otherwise, all further statutory references are to the Government Code.

[2] That section provides: "Absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, as of the last date on which the employee worked. [¶] A permanent or probationary employee may within 90 days of the effective date of such separation, file a written request with the department for reinstatement; provided, that if the appointing power has notified the employee of his or her automatic resignation, any request for reinstatement must be in writing and filed within 15 days of the service of notice of separation. Service of notice shall be made as provided in Section 18575 and is complete on mailing. Reinstatement may be granted only if the employee makes a satisfactory explanation to the department as to the cause for his or her absence and his or her failure to obtain leave therefor, and the department finds that he or she is ready, able, and willing to resume the discharge of the duties of his or her position or, if not, that he or she has obtained the consent of his or her appointing power to a leave of absence to commence upon reinstatement. [¶] An employee so reinstated shall not be paid salary for the period of his or her absence or separation or for any portion thereof."

The interest of a permanent or tenured civil servant in the continuation of his or her employment is a vested property interest qualifying for protection under the Constitution's due process guarantee. (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774].) Yet the Courts of Appeal have rendered conflicting decisions on the requirements of due process in the context of the AWOL statute. Some have held that due process does not require any form of notice or hearing before the employment relationship is severed upon occurrence of the conditions set forth in section 19996.2(a). Others have equated the statute's "automatic resignation" with a termination for cause, and have concluded that it is subject to the same due process requirements of pretermination notice and posttermination evidentiary hearing.

We base our resolution of this issue on our analyses of the AWOL statute itself and of pertinent decisions of the United States Supreme Court, and on our assessments of the employee's private interest in retaining employment and of the public's interest in promptly removing from the state payroll those employees who are absent without leave. We conclude that before the state invokes the AWOL statute, due process requires that it provide the employee with notice and an opportunity to respond. But because a constructive resignation under the AWOL statute differs significantly from a dismissal for cause, we also conclude that due process does not require that the employee be given a postseverance evidentiary hearing.

## Background

On April 18, 1984, Stanley Coleman, Jr., who had been employed by the State of California as a telecommunications assistant in the Department of General Services for approximately one and one-half years, became ill and fainted after an argument with his supervisor. The next day, Coleman sought medical treatment.

For the next two months, Coleman received nonindustrial disability benefits (§ 19878 et seq.). On June 15, 1984, the Employment Development Department (EDD) terminated the benefits; Coleman, however, did not return to work.

On July 3, 1984, Coleman told his supervisor over the telephone that he had received EDD's notice of termination of benefits, that he thought it was a mistake, and that he would discuss the matter with EDD. On July 18, 1984, when Coleman still had not returned to work, his supervisor tried to reach him by telephone, without success. The next day, the Department of General Services notified Coleman in writing that under section 19996.2(a)

his unauthorized absence was deemed an "automatic resignation" from state employment.

Coleman requested reinstatement. Section 19996.2(a) allows reinstatement if the employee gives "a satisfactory explanation" for the unapproved absence and there is an administrative finding that the employee "is ready, able, and willing to resume the discharge of the duties of his or her position." At the administrative hearing on his reinstatement request, Coleman testified that he had not gone back to work because he thought he would continue to receive disability benefits.

The hearing officer denied Coleman's request for reinstatement. He rejected Coleman's version of the facts, finding that Coleman did not have a valid excuse for not returning to work and that Coleman had failed to make the requisite showing he was "ready, able, and willing" to resume his duties. The Department of Personnel Administration (hereafter Department) adopted that ruling.

Coleman filed a petition for administrative mandamus in superior court. He challenged on due process grounds the constitutionality of the AWOL statute's "automatic resignation" provision, and sought reversal of the Department's order denying him reinstatement, asserting that the order was unsupported by the weight of the evidence. The superior court rejected the claims, and denied the petition.

Coleman sought review in the Court of Appeal, which affirmed the judgment of the superior court. The Court of Appeal rejected Coleman's procedural due process challenge to the AWOL statute, holding that due process does not require the state to provide an employee with notice or an opportunity to be heard before treating the employee's unauthorized absence for five consecutive working days as an implied or constructive resignation. We granted Coleman's petition for review.

DISCUSSION

A. *Section 19996.2(a)*

Relying on *Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532 [84 L.Ed.2d 494, 105 S.Ct. 1487] and *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d 194, Coleman contends that an "automatic resignation" under section 19996.2(a), based on an unauthorized absence of five consecutive working days, is no different from, and thus requires the same procedural protections as, a dismissal for cause. A brief overview of the relevant

statutory scheme is necessary to place Coleman's due process challenge in perspective.

Section 19996.2(a), the AWOL statute, provides that an employee's "absence without leave, whether voluntary or involuntary, for five consecutive working days is an automatic resignation from state service, as of the last date on which the employee worked."[3] ▮▮▮▮ The employee's unapproved absence is deemed to be an abandonment of employment or a constructive resignation. (*Baker* v. *Wadsworth* (1970) 6 Cal.App.3d 253, 263 [85 Cal.Rptr. 880] [construing a similar local civil service rule].) Although some courts have characterized this abandonment of employment as "evidencing an intent to resign" (*Zike* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 817, 821 [193 Cal.Rptr. 766]; see also *Baker* v. *Wadsworth, supra*, 6 Cal.App.3d at p. 263), the AWOL statute provides that the unauthorized absence "whether voluntary or involuntary[4] . . . is an automatic resignation."

As mentioned earlier, section 19996.2(a) allows for reinstatement. A grant of reinstatement, however, does not set aside the resignation. Rather, a reinstated employee is restored to his or her former position with the same rights of tenure and seniority, but is not entitled to any salary "for the period of his or her absence or separation or for any portion thereof." (§ 19996.2(a); compare § 19996.1, subd. (a) [providing that a resignation obtained under duress is to be "set aside" and permitting an award of back wages].)

▮▮▮▮ The AWOL statute on its face does not provide for notice or an opportunity for the employee to be heard before the deemed resignation takes effect, nor does it provide for any hearing at which the state must prove the facts underlying the constructive resignation. Coleman contends that the lack of these procedural protections violates due process and is therefore unconstitutional. As he notes, an employee dismissed for cause is constitutionally entitled to these protections. (See *Skelly* v. *State Personnel Bd., supra*, 15 Cal.3d 194, 215; *Kirkpatrick* v. *Civil Service Com.* (1978) 77 Cal.App.3d 940, 945 [144 Cal.Rptr. 51].)

---

[3] This section, enacted in 1981, replaced former section 19503, which since 1945 had provided that a state employee's absence from work without leave for a specified period was an automatic resignation. The only significant difference between present section 19996.2 and former section 19503 is that under the present section the Department, rather than the State Personnel Board, has jurisdiction over requests for reinstatement.

[4] The absence here was voluntary. Thus, our constitutional analysis and holding pertain only to an unauthorized voluntary absence.

## B. *Procedural Due Process*

■ The Fourteenth Amendment to the United States Constitution "places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." (*Memphis Light, Gas & Water Div.* v. *Craft* (1978) 436 U.S. 1, 9 [56 L.Ed.2d 30, 38-39, 98 S.Ct. 1554]; accord *Cleveland Board of Education* v. *Loudermill, supra,* 470 U.S. 532, 538 [84 L.Ed.2d 494, 501]; *Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268, 276 [146 Cal.Rptr. 208, 578 P.2d 925].) The California Constitution contains a similar provision. (Cal. Const., art. I, § 7, subd. (a); *Garfinkle* v. *Superior Court, supra,* at p. 281.)

■ Property interests that are subject to due process protections are not created by the federal Constitution. "Rather, they are created, and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701]; *Paul* v. *Davis* (1976) 424 U.S. 693, 709 [47 L.Ed.2d 405, 418-419, 96 S.Ct. 1155].) California's statutory scheme regulating employment in civil service "confers upon an individual who achieves the status of 'permanent employee' a property interest in the continuation of his [or her] employment which is protected by due process." (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 206.)

■ Only those actions that may fairly be attributed to the state, however, are subject to due process protections. (*Shelley* v. *Kraemer* (1948) 334 U.S. 1, 13 [92 L.Ed. 1161, 1180-1181, 68 S.Ct. 836, 3 A.L.R.2d 441]; *Garfinkle* v. *Superior Court, supra,* 21 Cal.3d 268, 281-282; *Martin* v. *Heady* (1980) 103 Cal.App.3d 580, 586 [163 Cal.Rptr. 117].) ■ Accordingly, constructive resignation under the AWOL statute implicates procedural due process only if, in invoking the statute, the state acts to effect a property deprivation. (*Board of Regents* v. *Roth, supra,* 408 U.S. 564, 570, fn. 7 [33 L.Ed.2d 548, 556], citing *Bell* v. *Burson* (1971) 402 U.S. 535, 542 [29 L.Ed.2d 90, 96, 91 S.Ct. 1586]; *Garfinkle* v. *Superior Court, supra,* at pp. 281-282.)

In this case, the Court of Appeal upheld the constitutionality of the AWOL statute's "automatic resignation" provision. It reasoned that, upon occurrence of the conditions specified in the statute, Coleman's vested property interest in state employment ceased to exist as a result of his own conduct. Two earlier cases from the same appellate district (*Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312 [169 Cal.Rptr. 823]; *Armistead* v.

*State Personnel Bd.* (1981) 124 Cal.App.3d 61 [177 Cal.Rptr. 7]) reached similar results, although their reasoning differed.

Other courts, however, have equated resignation under the AWOL statute with a dismissal for cause, and thus would require the full panoply of procedural protections applicable to such dismissals. (See *Phillips* v. *State Personnel Bd.* (1986) 184 Cal.App.3d 651, 658 [229 Cal.Rptr. 502]; *Zike* v. *State Personnel Bd., supra,* 145 Cal.App.3d 817, 823-824; see also *Curia* v. *Civil Service Com.* (1981) 126 Cal.App.3d 994, 1008-1009 [179 Cal Rptr. 476]; see also *Allen* v. *Department of Personnel Administration* (1987) 193 Cal.App.3d 355, 361 [238 Cal.Rptr. 317].)

A determination of what process is due here depends upon whether the separation from state employment effected by the AWOL statute's "automatic resignation" provision is a deprivation of property by the state, or whether it is merely a lapse of an interest in property upon the occurrence of conditions specified in the statute. Three decisions of the United States Supreme Court assist in our resolution of this issue. They are *Cleveland Board of Education* v. *Loudermill, supra,* 470 U.S. 532 (hereafter *Loudermill*); *Texaco, Inc.* v. *Short* (1982) 454 U.S. 516 [70 L.Ed.2d 738, 102 S.Ct. 781] (hereafter *Texaco*); and *United States* v. *Locke* (1985) 471 U.S. 84 [85 L.Ed.2d 64, 105 S.Ct. 1785] (hereafter *Locke*).

In *Loudermill,* the high court considered the due process implications of the summary dismissals of two Ohio civil service employees, Loudermill and Donnelly, who under Ohio law held their positions during " 'good behavior and efficient service' " and could be dismissed only for " 'misfeasance, malfeasance, or nonfeasance in office.' " (470 U.S. at pp. 538-539 [84 L.Ed.2d at p. 501].) Loudermill, a security guard, was terminated for falsely stating on his job application that he had never been convicted of a felony, while Donnelly, a bus mechanic, was dismissed for failing an eye examination. (*Id.* at pp. 535-536 [84 L.Ed.2d at pp. 499-500].) Ohio law provided only for a posttermination hearing. (*Id.* at p. 545 [84 L.Ed.2d at p. 506].) The United States Supreme Court concluded that, as tenured civil service employees with property interests in continued employment, Loudermill and Donnelly were constitutionally entitled to notice and an opportunity to respond before they were discharged, as well as to the posttermination administrative procedure provided under Ohio law. (*Id.* at pp. 547-548 [84 L.Ed.2d at pp. 507-508].) The court held that Ohio's failure to afford pretermination protections deprived the discharged employees of due process of law. (*Ibid.* [84 L.Ed.2d at pp. 507-508].)

In so holding, the high court rejected the contention made by one of the employing agencies that there was no due process violation because the

procedure used to discharge the two state employees met the requirements set forth in the Ohio statutory scheme. (*Loudermill, supra,* 470 U.S. at pp. 539-541 [84 L.Ed.2d at pp. 501-503].) Relying on the plurality opinion in *Arnett* v. *Kennedy* (1974) 416 U.S. 134, 152-154 [40 L.Ed.2d 15, 32-33, 94 S.Ct. 1633], the agency argued that due process was satisfied because the statutory scheme that created the vested right to civil service employment itself specified the manner for terminating that right.

The *Loudermill* court disagreed. Repudiating the plurality position in *Arnett* v. *Kennedy, supra,* 416 U.S. 134, the high court said: "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.' " (*Loudermill, supra,* 470 U.S. 532, 541 [84 L.Ed.2d 494, 503].)

■ Thus, under *Loudermill,* the government cannot limit a public employee's right to due process simply by providing a statutory scheme that sets forth specific procedures for a termination proceeding when those procedures fall short of federal constitutional requirements.

Unlike the Ohio statutory scheme considered in *Loudermill,* the AWOL statute at issue here does not prescribe any procedures that the state must follow before it can terminate an employee. The AWOL statute merely defines when an unauthorized absence constitutes an "automatic resignation."

As explained previously, a property right in public employment is a creation of state law. (*Board of Regents* v. *Roth, supra,* 408 U.S. 564, 577 [33 L.Ed.2d 548, 560-561].) The statutory terms that define a particular right to employment determine its dimensions and scope. (*Id.* at p. 578 [33 L.Ed.2d at pp. 561-562].) Here, those terms provide for permanent separation from state employment in either of two ways: resignation or removal for cause. (§ 19996.)[5] An employee can resign in either of two ways: by

---

[5] Justice Broussard's concurring and dissenting opinion maintains that the AWOL statute's provision for "automatic resignation" suffers from the same constitutional defect as the Ohio statutory scheme considered in *Loudermill,* namely, providing insufficient procedural safeguards for effecting a deprivation of property. To support this position, the opinion characterizes the AWOL statute as partly substantive and partly procedural, claiming that the substantive aspect of the statute makes a five-day unexcused absence "grounds for termination," while the deficient procedural aspect is found in the "deemed" resignation. (Conc. and dis. opn. of Broussard, J., *post,* at pp. 1129-1130.) But this characterization of the AWOL statute treats resignation under the statute as indistinguishable from a dismissal for cause, in plain disregard of the contrary provisions of section 19996, which *expressly* distinguish between the two means of ending public employment.

affirmatively relinquishing employment (see *Bidwell* v. *State of California* ex rel. *Dept. of Youth Authority* (1985) 164 Cal.App.3d 213 [210 Cal.Rptr. 381]) or, as described in the AWOL statute, by remaining absent without leave for five consecutive working days.

■ By resigning, the employee relinquishes entitlement to state employment. (See, e.g., *Bidwell* v. *State of California* ex rel. *Dept. of Youth Authority, supra,* 164 Cal.App.3d 213; § 19996.1.) Through manifestation of the intent to resign, the employee "has voluntarily surrendered the property interest upon whose existence the procedural rights depend." (*Stone* v. *University of Maryland Medical System* (4th Cir. 1988) 855 F.2d 167, 174, fn. 7.) In that situation, the state does not act to deprive the employee of property and therefore it has no duty to afford the employee any procedural protections either before or after the resignation takes effect. (*Ibid.*)

■ Under the AWOL statute, when an employee is absent without leave for five consecutive working days, it is the employee who severs the employment relationship, not the state. Because the statute provides for the automatic extinguishment of a property interest upon the occurrence of conditions within the exclusive control of the holder of that interest, it resembles statutes addressed in two other decisions of the United States Supreme Court.

In both *Texaco, supra,* 454 U.S. 516, and *Locke, supra,* 471 U.S. 84, the United States Supreme Court upheld the constitutionality of statutes providing for the automatic extinguishment of a vested property right upon satisfaction of certain statutory conditions. Although both cases involved property interests in mineral rights, rather than property interests in employment rights, the decisions are pertinent here because they concerned statutes providing, as here, for the automatic cessation of a vested property right upon the occurrence of statutorily specified conditions.

*Texaco* involved an Indiana statute that automatically extinguished mineral interests after twenty years unless the holder of the interest undertook one of three steps to assert continuing dominion over the property. Upon failure to perform any one of these acts, the mineral interest lapsed and reverted to the surface owner. The statute did not require notice to the mineral owner before the statutory lapse. (*Texaco, supra,* 454 U.S. at pp. 518, 520 [70 L.Ed.2d at pp. 743-745].)

In affirming the state's right to enact legislation that conditioned the retention of a vested property right on some affirmative act, the United States Supreme Court said in *Texaco*: "Through its Dormant Mineral Interests Act . . . the State has declared that this property interest is of less than

absolute duration; retention is conditioned on the performance of at least one of the actions required by the Act. We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, *the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest.*" (*Texaco, supra*, 454 U.S. 516, 526 [70 L.Ed.2d 738, 748-749], italics added.)

Although the statute in *Texaco* did not require notice to the holder of the mineral interest of the impending lapse of those interests, the United States Supreme Court held there was no violation of due process because the holder was deemed to have knowledge of the law. (*Texaco, supra*, 454 U.S. 516, 533 [70 L.Ed.2d 738, 753-754].) The court distinguished the "self-executing feature of the statute," which caused the mineral interest to lapse upon the mineral owner's failure to perform one of three specified acts, from a "subsequent judicial determination" in a quiet title action to determine conclusively that the mineral interest had reverted to the surface owner, noting that in the latter case the right to notice and a hearing was undisputed. (*Texaco, supra*, 454 U.S. 516, 533-536 [70 L.Ed.2d 738, 753-756], citing *Mullane* v. *Central Hanover Tr. Co., supra*, 339 U.S. 306, 314 [94 L.Ed. 865, 873].)

Three years later, in *Locke, supra*, 471 U.S. 84, the high court rejected a constitutional challenge to a federal statute that deemed the failure by a mining claimant to comply with annual filing requirements to "conclusively" establish abandonment of the mining claim. (*Id*. at p. 89 [85 L.Ed.2d at pp. 72-73].) The court determined that individualized notice of the filing deadline to claim holders was unnecessary. The court reasoned that the statute's three-year grace period provided sufficient time for individuals to learn about the law, and therefore there was no violation of procedural due process. (*Id*. at pp. 108-110 [85 L.Ed.2d at pp. 84-85].) The court did note that on "adjudicative" issues that were subject to dispute—for instance, whether the requisite filings actually had been made—the statute did provide for notice and hearing. (*Id*. at p. 109, fn. 17 [85 L.Ed.2d at p. 85].)

In this case, the Department relies on *Texaco* and *Locke* in arguing that under the AWOL statute a civil service employee's property interest in government employment simply lapses upon the occurrence of the specified statutory conditions (absence for five consecutive working days and without leave) and that because the lapse is automatic as the result of its self-executing nature, the extinguishment of the employee's property interest does not violate due process.

Coleman, on the other hand, contends that *Loudermill* controls his case and that the constructive resignation provision of the AWOL statute is

nothing more than an employer-initiated termination. He maintains that before the state may invoke the AWOL statute in the case of a tenured or permanent civil service employee, it must afford the same panoply of procedural protections that apply to a dismissal for cause. Those safeguards are pretermination notice and an opportunity for the employee to respond to the allegations, followed by a full-scale administrative hearing.

The issue thus is whether under *Loudermill* (*supra*, 470 U.S. 532) the "automatic resignation" provision of the AWOL statute at issue here is an impermissible legislative limitation of procedural protections, or whether, as in *Texaco*, it is a self-executing lapse of a property interest upon the owner's failure to perform a "reasonable condition[] that indicate[s] a present intention to retain the interest." (*Texaco, supra*, 454 U.S. 516, 526 [70 L.Ed.2d 738, 749].)

As we have seen, under *Loudermill* the procedures used to dismiss a public employee must comport with federal constitutional requirements. (*Loudermill, supra*, 470 U.S. at p. 541 [84 L.Ed.2d at p. 503].) It is the state, however, that defines the substantive nature of the property interest (*Board of Regents* v. *Roth, supra*, 408 U.S. at p. 577 [33 L.Ed.2d at pp. 560-561]), including conditions for its lapse (*Texaco, supra*, 454 U.S. 516, 526 [70 L.Ed.2d 738, 749]). ▮ As the high court observed in *Texaco*, "just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that property right on the performance of reasonable conditions that indicate a present intention to retain the interest." (*Texaco, supra*, at p. 526 [70 L.Ed.2d at pp. 748-749].)

Here, under the AWOL statute the employee's property right, that is, the right to continued government employment, ends upon the occurrence of the conditions specified in the statute. In this respect, the AWOL statute resembles the "automatic lapse" statutes that the United States Supreme Court considered in *Texaco* and *Locke*, which provided for the extinguishment of mineral interests or mining claims upon the holders' failure to perform some affirmative act to retain those interests or claims.

▮ Unlike the statutes in *Texaco* and *Locke*, however, the AWOL statute is not self-executing. Although the AWOL statute defines an unauthorized absence of five consecutive working days as an "automatic resignation," the decision whether to invoke the statute's resignation provision rests with the state. Therefore, the absence without leave becomes an automatic or constructive resignation only if the state decides to invoke the statute.

It is true that the AWOL statute does not expressly grant the state such discretion. In practice, however, the state does exercise discretion in determining whether or not to invoke the statute, as this case illustrates: Coleman was absent without leave for over a month before the state treated his absence as a statutory resignation. (See also *Goggin* v. *State Personnel Bd.* (1984) 156 Cal.App.3d 96, 101 [202 Cal.Rptr. 587] [only after many unsuccessful attempts for two months to contact the absent employee did the state invoke the automatic resignation provision]; *Zike* v. *State Personnel Bd., supra*, 145 Cal.App.3d 817, 820-821 [a school counselor's late return for the fall term was treated as an automatic resignation, although the state had acquiesced in three previous late returns by the same employee].)

In addition, before it can invoke the AWOL statute, the state must make factual determinations; whether the employee has resigned under the AWOL statute turns on the presence of the factual prerequisites for statutory resignation, namely, an absence that is for five consecutive working days and is without leave.

Because of the need for the state to make factual determinations before it can invoke the AWOL statute, and because of its discretion in invoking the statute, there is state involvement. In this respect, the severing of the property interest under the AWOL statute differs from the automatic lapse of property interests under the statutes considered in *Texaco* (*supra*, 454 U.S. 516) and *Locke* (*supra*, 471 U.S. 84). There, the mining interests or mineral claims lapsed automatically upon the failure of the holders to perform certain conditions specified in the statutes. Here, on the other hand, the final determination of whether there is a resignation depends on decisions by the state. This factor, coupled with the direct impact that loss of employment has on an individual's livelihood and ability to meet the needs of basic sustenance, distinguishes the AWOL statute from the statutes considered in *Texaco* and *Locke*. This distinction compels some meaningful mechanism of procedural protections before the state, as an employer, may treat a permanent or tenured employee's unauthorized absence as a resignation under the AWOL statute.

The remaining question is what process is due. ▮▮▮ "[N]ot all situations calling for procedural safeguards call for the same kind of procedure." (*Morrissey* v. *Brewer* (1974) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].)

The nature of the property deprivation itself determines what procedural protections the federal Constitution requires. (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334-335 [47 L.Ed.2d 18, 32-36, 96 S.Ct. 893].) A resolution of what constitutional protections are appropriate in a particular context de-

pends on the interests affected, the government's as well as the employee's. (*Id.* at p. 334 [47 L.Ed.2d at pp. 32-33].) "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Ibid.* [47 L.Ed.2d at pp. 32-33].)

In the discussion that follows, we shall examine each of these three factors, noting in particular the similarities and dissimilarities between a resignation under the AWOL statute and a discharge for cause. From this examination, we shall conclude that, as in the case of a discharge for cause (see *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 215), the state must, before treating an employee's unexcused absence as a resignation under the AWOL statute, give notice to the employee of the facts supporting resignation and an opportunity to respond. But we shall also conclude that, unlike an employee who is discharged for cause (see *Kirkpatrick* v. *Civil Service Com., supra,* 77 Cal.App.3d 940, 945; § 19578; see also *Skelly* v. *State Personnel Bd., supra,* at p. 203, fn. 17), an employee who has been determined to have resigned under the AWOL statute does not have a due process right to a postseverance evidentiary hearing at which the state must prove the facts supporting the determination of resignation.

In a resignation under the AWOL statute, the private interest is the tenured or permanent employee's vested right to the continuation of state employment, the very same interest at stake in a discharge for cause. Because the private interest in both instances is the same, some Courts of Appeal have held that the state must provide the same procedural protections to an employee who is deemed to have constructively resigned under the AWOL statute as are required when it institutes a dismissal for cause. (*Phillips* v. *State Personnel Bd., supra,* 184 Cal.App.3d 651, 660; *Zike* v. *State Personnel Bd., supra,* 145 Cal.App.3d 817, 823; *Harris* v. *State Personnel Bd.* (1985) 170 Cal.App.3d 639, 645-646 [216 Cal.Rptr. 274]; see also *Allen* v. *Department of Personnel Administration, supra,* 193 Cal.App.3d 355, 361.) These courts have failed to recognize that although the private interest is the same in the two situations, the manner in which it is affected differs substantially.

When loss of the vested right to continued state employment results from a disciplinary dismissal, the attendant stigma of the discharge may threaten the affected employee's future livelihood. For instance, a disciplinary dis-

charge resulting from dishonesty or insubordination[6] tarnishes the employee's good name and may therefore hamper the ability to obtain future employment. (See *Phillips* v. *Civil Service Com.* (1987) 192 Cal.App.3d 996, 1000 [237 Cal.Rptr. 751], citing *Paul* v. *Davis, supra*, 424 U.S. 693, 702 [47 L.Ed.2d 405, 414].) Similarly, a disciplinary dismissal for "inexcusable absence without leave" (see fn. 6, *ante*) can have an adverse effect on the employee because it establishes dereliction of duty, thus stigmatizing the discharged employee's professional reputation. (See, e.g., *Martin* v. *State Personnel Bd.* (1982) 132 Cal.App.3d 460, 462-464 [183 Cal.Rptr. 295] [correctional officer terminated for abandoning post one time and failing to appear for work on Thanksgiving Day as ordered]; *Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 312 [141 Cal.Rptr. 354] [chronic absenteeism treated as inexcusable neglect of duty, coupled with other misconduct, was basis for dismissal].)

While a disciplinary dismissal for "inexcusable absence without leave" (§ 19572) facially resembles the basis underlying a constructive resignation under the AWOL statute (§ 19996.2(a)), there is an important difference. Unlike a disciplinary discharge, resignation from state employment does not seriously damage an employee's standing and associations in the community, nor does it foreclose other employment opportunities. (See *Paul* v. *Davis, supra*, 424 U.S. 693, 709-710 [47 L.Ed.2d 405, 418-419], citing *Board of Regents* v. *Roth, supra*, 408 U.S. 564, 573 [33 L.Ed.2d 548, 558-559].) A resignation, therefore, carries no stigma.

In addition, a resignation under the AWOL statute "does not jeopardize any rights or privileges of the employee except those pertaining to the position from which he or she resigns." (§ 19996.1.) As the Department acknowledged at oral argument, such a resignation does not affect entitlement to payment for accrued vacation time or retention of vested pension rights.

There is one other significant distinction between a dismissal for disciplinary reasons and a constructive resignation under the AWOL statute: the manner in which it affects an employee's right to future state employment. An employee who has been discharged for cause can thereafter be disqualified from taking a civil service examination. (§ 18935, subd. (h).) By con-

---

[6]Section 19572 sets forth the grounds for discipline, including dismissal. Among them are fraud in securing appointment, incompetency, inefficiency, inexcusable neglect of duty, *insubordination*, *dishonesty*, drunkenness on duty, intemperance, addiction to the use of controlled substances, *inexcusable absence without leave*, conviction of a crime of moral turpitude, immorality, discourteous treatment of the public or other employees, improper political activity, willful disobedience, misuse of state property, and unlawful discrimination. (Italics are added to indicate the statutory grounds used in the illustrations in the text.)

trast, an employee who has resigned can be reinstated. (§ 19140.) And in the case of a resignation under the AWOL statute, there is express language in the statute allowing for reinstatement upon "satisfactory explanation" for the unexcused absence and a showing that the employee is "ready, able, and willing" to resume duties. (§ 19996.2(a).)

These marked differences between a resignation under the AWOL statute and a disciplinary dismissal militate against imposing identical procedural protections in each instance. (See *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 563, fn. 6 [150 Cal.Rptr. 129, 586 P.2d 162] [although the loss of the property right may be the same, dissimilarities in the reason for that loss dictate against establishing " 'inflexible procedures universally applicable to every imaginable situation' "], quoting *Board of Curators, Univ. of Mo.* v. *Horowitz* (1978) 435 U.S. 78, 86 [55 L.Ed.2d 124, 132-133, 98 S.Ct. 948] [the significant difference between a student's removal from a public college for academic failure and removal for violation of a school rule with its attendant overtones of misconduct "calls for far less stringent procedural requirements in the case of an academic dismissal"].)

We now consider the second factor of the test enunciated in *Mathews* v. *Eldridge, supra,* 424 U.S. 319, 335 [47 L.Ed.2d 18, 33-34]: the risk of erroneous deprivation of the private interest through the procedures used. Previously, we noted that before invoking the AWOL statute, the state need only determine whether the employee had been absent for five consecutive working days and whether that absence had been without leave. These relatively simple determinations generally can be made from personnel records. In sharp contrast, a disciplinary discharge often involves complex facts and may require a sensitive evaluation of the nature and seriousness of the misconduct and whether it warrants the grave sanction of dismissal.

In addition to notice, the employee must have an opportunity to challenge the state's factual determinations before an "impartial and disinterested" decision maker (*Marshall* v. *Jerrico* (1980) 446 U.S. 238, 242 [64 L.Ed.2d 182, 188, 100 S.Ct. 1610]). This will satisfy the "two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process." (*Ibid.* [64 L.Ed.2d 182, 188]; see also *Mackey* v. *Montrym* (1979) 443 U.S. 1, 13 [61 L.Ed.2d 321, 331, 99 S.Ct. 2612] ["the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' . . . interest be so comprehensive as to preclude any possibility of error"].)

Because the factual determinations to be made under the AWOL statute are relatively simple, notice and an opportunity to respond before the resignation goes into effect are adequate to safeguard against erroneous decisions. Unlike a disciplinary dismissal, due process in this case does not require that the state also give the employee a postseverance evidentiary hearing at which the employee may be represented by counsel, may call witnesses, or may cross-examine adverse witnesses.[7] (See *Knudson v. City of Ellensburg* (9th Cir. 1987) 832 F.2d 1142, 1149 ["[P]redeprivation opportunity to submit written objections to City's proposed action" terminating discharged employee's medical disability benefits would assure adequate and fair consideration of employee's objections, but "[a]n evidentiary hearing would be of little value to that determination . . . ."].)

Finally, we consider the third factor of the test in *Mathews* v. *Eldridge, supra*, 424 U.S. 319, 335 [47 L.Ed.2d 18, 33-34]: the government's interest. The state has an interest in promptly removing from the state payroll those employees who have been absent without leave for five consecutive working days in order to make jobs available and to maximize its productive workforce. But the state also "shares the employee's interest in avoiding . . . erroneous decisions." (*Loudermill, supra*, 470 U.S. 532, 544 [84 L.Ed.2d 494, 505].) To require the state to give an employee prior notice and an opportunity to respond within a few days places no undue administrative or financial burden on the state. As noted earlier, before invoking the AWOL statute, the state necessarily had to determine that the absence was for the statutorily specified period and was without leave. Once the state has made these preliminary determinations, the requirements of written notice to the employee and an opportunity for a prompt response impose little additional burden on the state.

For the reasons discussed above, we conclude that before the state can treat a permanent or tenured employee's unexcused absence for five consecutive working days as a constructive resignation under the AWOL statute, it must give the employee written notice of the action contemplated. The notice must advise the employee of the facts supporting the state's invocation of the AWOL statute. If the employee challenges the accuracy of the state's factual basis, the state must, as soon as practicable, give the employee

---

[7] Contrary to the suggestion in Justice Broussard's concurring and dissenting opinion, the Department has not conceded the necessity for a postseparation evidentiary hearing. (Conc. and dis. opn. of Broussard, J., *post*, at pp. 1132-1133) It has merely adopted a procedure whereby at the commencement of the reinstatement hearing it proves the facts supporting constructive resignation. (See *Curia* v. *Civil Service Com., supra*, 126 Cal.App.3d 994, 1008.) The Department suggests that this provides an adequate protection for the employee and obviates the need for notice and an opportunity for the employee to be heard before separation from state employment. For the reasons stated in the text, we do not agree.

an opportunity to present his or her version of the facts. To assure "the appearance and reality of fairness" in the decisionmaking process (*Marshall v. Jerrico, supra*, 446 U.S. 238, 242 [64 L.Ed.2d 182, 188]) and to protect against a potential misuse of the AWOL statute, such an informal hearing must be before a neutral fact finder. Once the state has provided notice and an opportunity to respond, neither the federal nor the state Constitution requires anything more.[8]

This conclusion differs from that reached in the two concurring and dissenting opinions, one of which would impose all of the procedural protections available in a disciplinary dismissal, while the other would provide no procedural protections whatsoever. Our holding, on the other hand, both implements the legislative mandate that the conduct specified in the AWOL statute constitutes a resignation by the employee, and protects against factually unwarranted invocations of the statute.

We now turn to Coleman's contention that the AWOL statute's lack of procedural protections renders it void and unenforceable. When, as here, the "constitutional weakness" lies primarily in "what the statute[ ] [has] omitted, not [in its] express terms," the statute may properly be invoked so long as due process requirements are met. (*Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 403 [134 Cal.Rptr. 206, 556 P.2d 306].) In this case, as discussed earlier, those requirements are notice to the employee and an opportunity for the employee to respond before the separation from state service takes effect. After the employee has been given a chance to challenge the state's factual determinations before an impartial and disinterested decision maker, and the facts support the state's findings, the automatic resignation can properly take effect.

Coleman also argues that, because his employment relationship was severed without the necessary procedural protections, he is entitled to reinstatement. Not so.

In *Kristal* v. *State Personnel Bd.* (1975) 50 Cal.App.3d 230 [123 Cal.Rptr. 512], which involved a discharge for cause, the Court of Appeal held that the failure to provide the employee with pretermination notice and an opportunity to be heard did not entitle the employee to reinstatement. The

---

[8]Statements in the following cases inconsistent with this holding are disapproved: *Allen* v. *Department of Personnel Administration, supra*, 193 Cal.App.3d 355; *Phillips* v. *State Personnel Bd., supra*, 184 Cal.App.3d 651; *Harris* v. *State Personnel Bd., supra*, 170 Cal.App.3d 639; *Goggin* v. *State Personnel Bd., supra*, 156 Cal.App.3d 96; *Zike* v. *State Personnel Bd., supra*, 145 Cal.App.3d 817; *Curia* v. *Civil Service Com., supra*, 126 Cal.App.3d 994; *Armistead* v. *State Personnel Bd., supra*, 124 Cal.App.3d 61; and *Willson* v. *State Personnel Bd., supra*, 113 Cal.App.3d 312.

court reasoned that, because there were proper grounds for the employee's dismissal, the only prejudice the employee suffered was that of being discharged without having first been afforded his right to notice and an opportunity to respond. That prejudice, the court concluded, was "fully recompensed" by deferring the effective date of the termination and thus paying the employee from the date of the initial discharge until the date of the postdeprivation hearing. (*Id.* at p. 241.) We adopted that reasoning in *Barber* v. *State Personnel Bd., supra*, 18 Cal.3d 395, 402-403, which, as in *Kristal*, involved a "for cause" dismissal.

Here, although the state did not give Coleman prior notice or an opportunity to present his version of the facts until the reinstatement hearing, which occurred after the statutory resignation had taken effect, the only prejudice to Coleman was the denial of his right to those procedural protections before the severance of employment took effect. Coleman's unauthorized absence from work for more than a month amply supports the state's decision to invoke the "automatic resignation" provision of section 19996.2(a). Therefore, he is not entitled to reinstatement.

Nor does Coleman's separation from state service under the AWOL statute without notice and an opportunity to respond warrant an award of back wages. In this regard, we distinguish this case from our decision in *Barber* v. *State Personnel Bd., supra*, 18 Cal.3d at pages 402-403.

In *Barber* v. *State Personnel Bd., supra*, 18 Cal.3d at page 403, we held that the state violated due process when it discharged an employee for disciplinary reasons without prior notice or an opportunity to respond. As a result, we determined that the employee was entitled to back wages from the date of dismissal until the date the State Personnel Board, after an evidentiary hearing, upheld the discharge. But the employee had worked until being discharged, and presumably would have continued to do so had he not been discharged, and thus had lost salary as a result of the due process violation. Here, Coleman had not been reporting to work, and gave no indication he intended to return to work, when the state determined that he had resigned under the AWOL statute. Because he was not working, he lost no wages from the state's failure to give him prior notice or an opportunity to respond. He therefore is not entitled to an award of back salary.

C. *Coleman's Additional Contentions*

 Coleman contends that the AWOL statute violates substantive due process. We disagree.

Generally, the constitutional guaranty of substantive due process protects against arbitrary legislative action; it requires legislation not to be "unreasonable, arbitrary or capricious" but to have "a real and substantial relation to the object sought to be attained." (*Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].) Thus, legislation does not violate substantive due process so long as it reasonably relates "to a proper legislative goal." (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; see also *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 78 [177 Cal.Rptr. 566, 634 P.2d 917].)

Here, the AWOL statute's constructive resignation provision relates to a proper legislative goal. By linking a civil service employee's right to continued public employment to the state's legitimate expectation that the employee appear for work as scheduled, the statute furthers the basic premise of any employment relationship. Moreover, Coleman has not demonstrated that the legislation is unreasonable, arbitrary, or capricious in treating an absence for five consecutive working days as a resignation from state employment. Therefore, we reject Coleman's substantive due process challenge to the AWOL statute.

█ Coleman also argues that in treating his unauthorized absence as a resignation from employment under the AWOL statute, the state violated his constitutional right to equal protection by its failure to afford those procedural rights that apply to a disciplinary dismissal under section 19572, based on an "inexcusable absence without leave." For reasons that follow, we reject this contention.

The constitutional guarantee of equal protection compels like treatment for persons similarly situated. (*People* v. *Marshall* (1990) 50 Cal.3d 907, 945 [269 Cal.Rptr. 269, 790 P.2d 676]; *In re Eric J.* (1979) 25 Cal.3d 522, 531 [159 Cal.Rptr. 317, 601 P.2d 549]; *Gray* v. *Whitmore, supra,* 17 Cal.App.3d 1, 21.) As explained previously, because a resignation and a dismissal for cause have different impacts on a civil service employee's right to future public employment, persons who are deemed to have resigned under the AWOL statute and individuals who are discharged for misconduct are not similarly situated. Consequently, there is no equal protection violation.

Finally, Coleman asks us to hold that the Department's denial of reinstatement must be reviewed under the independent judgment test. █ Decisions of the State Personnel Board, an agency of constitutional authority (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 217, fn. 31), are reviewed only to determine whether substantial evidence supports the determination, even when vested rights are involved. (*Ibid.*; *Strumsky* v.

*San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35 [112 Cal.Rptr. 805, 520 P.2d 29]; see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144-145 [93 Cal.Rptr. 234, 481 P.2d 242].) Coleman, however, suggests that this standard is inappropriate because authority over reinstatement was, a few years ago, by statute, transferred from the State Personnel Board to the Department (see fn. 3, *ante*), an agency of statutory rather than constitutional authority. Here, the trial court did exercise its independent judgment in evaluating the administrative record, and the Department has not challenged the propriety of that standard in this case. Under these circumstances, an opinion by us on the subject would be purely advisory. ▮ "The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court." (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].)

## DISPOSITION

The judgment of the Court of Appeal is affirmed. Each party shall bear its own costs.

Lucas, C. J., Mosk, J., and Panelli, J., concurred. Eagleson, J.,* concurred in the judgment only.

**BROUSSARD, J.,** Concurring and Dissenting.—I concur in the majority opinion's conclusion that Government Code section 19996.2, subdivision (a)—the state employee absent-without-leave (hereafter AWOL) provision—violates procedural due process insofar as it authorizes the state to "automatically" terminate the employment of a permanent employee who the employer believes has been absent without leave for five consecutive days, without first notifying the employee or giving him or her the opportunity to respond to the allegations of unauthorized absence.

I cannot agree, however, with the opinion's further conclusion that "[o]nce the state has provided notice and an opportunity to respond, neither the federal nor the state Constitution requires anything more." (See maj. opn., *ante*, p. 1123.) In particular, I disagree with the opinion's conclusion that neither the federal nor the state Constitution requires the state to provide any form of posttermination hearing at which the state employer bears the burden of proving that the permanent employee was in fact absent without leave for five consecutive days and thus was properly subject to termination under the AWOL statute.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

In reaching the conclusion that no posttermination hearing is required in this context, the majority opinion withholds from public employees who are dismissed under the AWOL statute a basic procedural protection that is guaranteed to all public employees under the controlling decisions of both the United States Supreme Court (*Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532 [84 L.Ed.2d 494, 105 S.Ct. 1487] [hereafter *Loudermill*]) and this court (*Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] [hereafter *Skelly*]). Although the majority opinion bases its refusal to apply the full range of protections afforded by *Loudermill* and *Skelly* on the ground that a termination of employment under the AWOL provision is distinguishable in some respects from a termination of employment for other alleged employee misconduct, the distinctions on which the opinion relies do not, in my view, justify depriving employees whose livelihood is being terminated by the state of the minimum procedural protections guaranteed by the due process clause under *Loudermill* and *Skelly*. Accordingly, I dissent from the opinion insofar as it denies such employees this most basic procedural right.

I

Before reaching the question of the specific scope of the process that is constitutionally due a permanent employee whose employment is terminated under the AWOL statute, I must note a number of reservations that I have with the opinion's analysis of the threshold question of whether procedural due process protections are applicable in the AWOL context at all. Although I agree with the opinion's ultimate conclusion that the procedural due process guaranty is applicable here, the opinion's analysis of this threshold question is, in my view, flawed in several respects and may mislead future courts as to the proper application of procedural due process principles in other contexts.

The majority opinion properly begins its analysis by recognizing that under the controlling decisions of both the United States Supreme Court and this court, the permanent public employee in this case clearly had a constitutionally protected property interest in his continued employment. (See, e.g., *Loudermill, supra*, 470 U.S. 532, 538-541 [84 L.Ed.2d 494, 501, 503]; *Skelly, supra*, 15 Cal.3d 194, 204-207.) In *Loudermill*, the United States Supreme Court made clear that when a state acts to deprive such an employee of this constitutionally protected interest, procedural due process principles require the state to afford the employee certain minimal procedural safeguards to protect the employee from losing his or her livelihood because of the employer's inaccurate or incomplete knowledge of the facts on which the proposed termination is based.

After acknowledging the constitutionally protected nature of the employee's interest in continued employment, however, the opinion suggests that the *Loudermill, supra,* 470 U.S. 532, and *Skelly, supra,* 15 Cal.3d 194, decisions may not apply with full force here because in this case the termination of the employee's right to continued employment was the result of the employee's own conduct of being absent from work without leave, i.e., because the AWOL statute provides for automatic termination of the employee's property right in employment "upon the occurrence of conditions *within the exclusive control of the holder of that interest* . . . ." (See maj. opn., *ante,* p. 1115, italics added.) Indeed, although the point is not entirely clear, the opinion appears to suggest that because the AWOL statute expressly provides for the automatic termination or "lapse" of employment on the basis of conduct within the employee's own control, there is a serious question whether there is sufficient "state action" to bring the procedural due process principle into play at all. (See maj. opn., *ante,* pp. 1112-1113.)

In my view, the opinion's suggestion in this regard reflects a misunderstanding of past procedural due process decisions. In all of the employment cases in which the procedural due process principle has been applied, the employer could have maintained that it was the employee's own conduct—for example, the employee's theft of the employer's property or the employee's fraudulent statements on a job application—that resulted in the termination of employment. None of the cases discussed the question in these terms, however, because they all recognized that the protections of the due process clause are triggered *when the state decides to terminate the employee's employment* on the basis of its belief that the employee has committed conduct that calls for termination under the governing statutes or rules. It is the state's act in terminating the employment, not the suspected conduct of the employee, that constitutes the state action that brings the procedural due process protections into play. In this setting, the procedural due process protections are intended in large part to ensure that the state employer is acting on accurate information when it undertakes to deprive an employee of a constitutionally protected interest on the basis of alleged or suspected voluntary conduct of the employee.

The opinion's confusion in this regard may stem in part from the fact that the AWOL statute characterizes the employee's conduct as giving rise to an "automatic resignation" from employment. It is true that when a permanent employee *voluntarily resigns* from his or her employment, procedural due process principles do not come into play. (See *Stone* v. *University of Maryland Medical System* (4th Cir. 1988) 855 F.2d 167, 172-178 & fn. 7.) But the fact that the state need not engage in unnecessary and meaningless procedures when an employee voluntarily decides to resign does not mean

that the state can dispense with the required constitutional procedures simply by declaring, by statute or otherwise, that certain conduct of an employee will be "deemed" to constitute an "automatic resignation" from state employment. As noted, procedural due process protections are intended to afford an employee the opportunity to respond to charges that he or she has committed an act which the employer believes justifies termination; a state may not deprive an employee of this fundamental procedural protection through the use of a legal fiction like "automatic" or "constructive" resignation. (See, e.g., *Patterson* v. *Portch* (7th Cir. 1988) 853 F.2d 1399, 1406-1407; *Stone* v. *University of Maryland Medical System, supra*, 855 F.2d 167, 173.)

In a related vein, I think the opinion is also mistaken in its analysis of the United States Supreme Court decisions in *Texaco, Inc.* v. *Short* (1982) 454 U.S. 516 [70 L.Ed.2d 738, 102 S.Ct. 781] (hereafter *Texaco*) and *United States* v. *Locke* (1985) 471 U.S. 84 [85 L.Ed.2d 64, 105 S.Ct. 1785] (hereafter *Locke*), and in its suggestion that those decisions lend even superficial support to the state's claim that the AWOL provision at issue in this case does not violate procedural due process principles. The opinion suggests that because *Texaco* and *Locke* "upheld the constitutionality of statutes providing for the automatic extinguishment of a vested property right upon satisfaction of certain statutory conditions" (see maj. opn., *ante*, p. 1115), and because the AWOL statute at issue here put the employee on notice that his or her right to continued employment was conditioned on his or her not being absent without leave for five consecutive days, *Texaco* and *Locke* lend support to the proposition that the employee has no procedural due process right to notice and a hearing when the state proposes to invoke the AWOL statute to terminate his or her employment.

The flaw in the opinion's analysis on this point lies in its failure to distinguish between two wholly distinct aspects of the AWOL statute—the substantive rule embodied in the statute (a five-day absence without leave is grounds for termination) and the procedural aspect of the provision (when an employee is suspected of violating the AWOL provision, he or she shall be deemed to have "automatically resigned" and his or her employment may be terminated without notice or any opportunity to be heard).

As a substantive matter, the AWOL statute establishes the rule that a five-day absence without leave is, in itself, a basis on which an employee's employment may be terminated. Because this substantive rule is embodied in the statute, employees are on notice of the rule and have no basis for claiming a lack of fair notice if the employer relies on the statute to support termination without giving the employee any additional individualized no-

tice of the existence of the rule. In this respect, the *Texaco* and *Locke* decisions (see *Texaco, supra*, 454 U.S. 516, 531-538 [70 L.Ed.2d 738, 752-757]; *Locke, supra*, 471 U.S. 84, 108-110 [85 L.Ed.2d 64, 84-86]), among many others, demonstrate that application of the five-day AWOL rule to an employee without individualized notice of the existence of the rule does not deprive the employee of fair notice. (See 2 Rotunda et al., Treatise on Constitutional Law (1986) § 17.8, p. 261.)

Neither *Texaco, supra*, 454 U.S. 516, nor *Locke, supra*, 471 U.S. 84, however, provides any support for the very different claim that the *procedural* aspect of the AWOL provision is constitutional, i.e., that if the employer believes that an employee has been absent without leave for five consecutive days, the employer may deem the employee to have "automatically resigned" and may terminate his or her employment without affording the employee any opportunity to contest the accuracy of the charge. Although *Texaco* and *Locke* both upheld the validity of a substantive rule requiring a property owner to register a mining claim in order to preserve mineral rights, neither decision suggested that if the property owner challenged the assertion that it had failed to properly register the mining claim or to take other steps to preserve its rights, the government could constitutionally deny the property owner notice and a hearing on that contested question. Indeed, in *Texaco*, the court pointed out that under the statutory scheme at issue the property owner would have a full opportunity to litigate the issue in a judicial quiet title proceeding before it would be conclusively determined that its mineral interest had reverted to the surface owner (see *Texaco, supra*, 454 U.S. 516, 533-534 [70 L.Ed.2d 738, 753-754]); in *Locke*, the court was careful to point out that the legislation at issue expressly preserved the property owner's right to a hearing on its alleged noncompliance with the statute (see *Locke, supra*, 471 U.S. 84, 109, fn. 17 [85 L.Ed.2d 64, 85]).

Not only do *Texaco, supra*, 454 U.S. 516, and *Locke, supra*, 471 U.S. 84, provide no support for the state's procedural due process contention, but the United States Supreme Court decision in *Loudermill*—decided just two weeks prior to *Locke*—makes it absolutely clear that a state cannot limit an employee's *procedural* due process rights by conditioning the property right with restrictive procedural limitations. (See *Loudermill, supra*, 470 U.S. 532, 540-541 [84 L.Ed.2d 494, 502-503].) The AWOL statute at issue here embodies just such an impermissible condition, purporting to define an employee's property right in a manner which deprives an employee accused of being AWOL of *any* procedural protections whatsoever; under *Loudermill*, the statute's authorization of an "automatic" termination cannot properly affect the scope of the employee's procedural due process rights. Thus,

contrary to the opinion's implication (see maj. opn., *ante*, p. 1117), there is no inherent tension between *Loudermill* and *Texaco* or *Locke*, and *Texaco* and *Locke* provide no support for the state's defense of the procedural adequacy of the AWOL statute.

Despite its mistaken interpretation of *Texaco, supra*, 454 U.S. 516, and *Locke, supra*, 471 U.S. 84, the opinion ultimately reaches the correct conclusion that the state's termination of an employee under the AWOL statute *is* subject to procedural due process restrictions. In reaching this conclusion, the opinion relies on two factors: (1) the fact that the AWOL statute is not "self-executing" in the sense that the state retains the discretion not to terminate an employee even if he or she has been absent without leave for five consecutive days (see maj. opn., *ante*, pp. 1117-1118), and (2) the fact that the state can invoke the statute only after undertaking the adjudicatory task of determining whether the facts establish that the employee was absent for five consecutive working days and, if so, whether the absence was without leave (see maj. opn., *ante*, p. 1118). While the fact that the employer retains discretion not to terminate an employee, even where termination would be authorized under the statute, unquestionably increases the importance and significance of the employee's due process protections, in my view it is misleading to suggest that the applicability of procedural due process principles is dependent on the existence of such discretion. Even if a statute *compelled* the state to fire an employee who committed a specified form of misconduct, the employee would still be entitled to procedural due process protections to assure the reliability of the state's claim that such misconduct actually occurred.

Although I believe the opinion's analysis is flawed in the respects just discussed, I agree completely with the opinion's initial conclusion that procedural due process principles are applicable when the state acts to terminate a permanent employee's employment under the authority of the AWOL statute. (See maj. opn., *ante*, p. 1118.) Once that threshold issue is resolved, the question becomes *what* minimal procedural protections are constitutionally required when the state proposes to terminate employment under this provision.

## II

In resolving the question of what process is due in this context, we must again begin with the United States Supreme Court's controlling decision in *Loudermill, supra*, 470 U.S. 532. After assessing the nature and importance of the individual employee's interest in retaining employment and the countervailing governmental interest "in the expeditious removal of unsatisfacto-

ry employees and the avoidance of administrative burdens" (*id.* at pp. 542-543 [84 L.Ed.2d at p. 504]), the Supreme Court in *Loudermill* held that when a state acts to terminate the employment of a permanent employee, procedural due process principles require that the state, at a minimum, provide the employee with (1) notice of the proposed termination and an informal opportunity to respond to the charges before termination, and (2) a reasonably prompt posttermination hearing. (*Id.* at pp. 547-548 [84 L.Ed.2d at pp. 507-508]. See generally Silver, Public Employee Discharge and Discipline (1989) §§ 17.10-17.12, pp. 17-17 to 17-29, and cases cited.)

The majority opinion concludes that an employee who faces termination under the AWOL statute enjoys the same *pretermination* rights of notice and of an opportunity to informally respond to the charges as an employee who faces the loss of his or her job on the basis of allegations of other forms of misconduct, and I agree completely with that conclusion. As the opinion recognizes, these pretermination protections give an employee the opportunity to bring facts to the attention of his or her supervisor of which the supervisor may not be aware—facts that may demonstrate to the supervisor that the employee has not, in fact, been absent from his or her or job without leave, or that may persuade the supervisor to exercise discretion not to invoke the harsh penalty of the AWOL statute and, perhaps, to impose some other, alternative sanction. (See, e.g., *Loudermill, supra*, 470 U.S. 532, 543 [84 L.Ed.2d 494, 504-505].) These pretermination protections are no less important or relevant in the AWOL context than they are with regard to other terminations.

The opinion goes on to conclude, however, that the Constitution does not require the state to accord an employee whose employment has been terminated under the AWOL statute *any* posttermination procedure at all. The opinion's holding in this regard is rather surprising, since this conclusion is less protective of the constitutional rights of employees than the position taken in this case either by defendant Department of Personnel Administration in its brief before this court or by the Court of Appeal opinion, whose judgment the majority opinion affirms. Both the department and the Court of Appeal acknowledge (1) that when an employee challenges the validity of the facts on which the invocation of the AWOL statute depend, the governing procedural due process precedents require the state to provide a posttermination hearing at which the state, rather than the employee, must bear the burden of proving that the employee was, in fact, absent without leave for five consecutive working days, and (2) that if the state fails to meet its burden, it must reinstate the employee with backpay for the period of time the employee was improperly denied the opportunity to perform his or her duties. In my view, the majority opinion seriously errs in rejecting the

department's and the Court of Appeal's positions on this point, and in concluding that the Constitution permits the state to deny an employee who is dismissed under the AWOL statute any posttermination hearing on the question of whether he or she was properly terminated.

In its decision in *Loudermill, supra,* 470 U.S. 532, the United States Supreme Court expressly noted that its approval of the constitutional adequacy of the limited pretermination procedures of notice and an informal opportunity to respond rested in part on the fact that, under the state law applicable in that case, the employee was entitled to "a full post-termination hearing." (*Id.* at p. 546 [84 L.Ed.2d at p. 506].) As the *Loudermill* court recognized, when an employee is afforded only the minimal pretermination protections of notice and an informal opportunity to respond, the pretermination procedure cannot be treated as reliably or "definitively resolv[ing] the propriety of the discharge . . . [but rather operates simply as] an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." (*Id.* at pp. 545-546 [84 L.Ed.2d at p. 506].) A posttermination hearing is required by due process to assure that there is a definitive resolution of the propriety of the discharge, in a setting in which the dismissing supervisor must bear the burden of proving to a neutral decision maker that the termination rests on an accurate assessment of the facts. (See, e.g., *Phillips* v. *State Personnel Bd.* (1986) 184 Cal.App.3d 651, 656 [229 Cal.Rptr. 502].) As Justice Thaxton Hanson explained for the Court of Appeal in *Curia* v. *Civil Service Com.* (1981) 126 Cal.App.3d 994, 1008 [179 Cal.Rptr. 476]: "In view of the property interest involved, it appears that the employee who challenges a determination of the governmental employer that [an AWOL provision] is applicable to terminate her employment is entitled, at the very least, to place the burden of proof on the employer at a formal evidentiary hearing on the issues." (See generally Silver, Public Employee Discharge and Discipline, *supra,* §§ 17.10, 17.11, at pp. 17-23 to 17-29, and cases cited.)

The majority opinion cites nothing in the *Loudermill* decision, *supra,* 470 U.S. 532, to support its conclusion that it is constitutionally permissible for a state to deprive a permanent employee of generally applicable posttermination due process procedures when it terminates the employee for being absent without leave. Although the opinion suggests that there are a number of grounds on which an AWOL termination may be distinguished from other "for cause" terminations for purposes of assessing the need for a posttermination proceeding, in my view none of the suggested rationales withstands scrutiny.

The opinion suggests that a posttermination hearing is unnecessary because the facts giving rise to a constructive resignation under the AWOL statute involve "relatively simple determinations [that] generally can be made from personnel records," whereas "a disciplinary discharge often involves complex facts and may require a sensitive evaluation of the nature and seriousness of the misconduct and whether it warrants the grave sanction of dismissal." (See maj. opn., *ante,* p. 1121.) The numerous cases that have arisen under various AWOL provisions, however, belie the opinion's assertion that the applicability of the AWOL statute can generally be decided from personnel records alone, and demonstrate that an employer's decision whether or not to invoke the AWOL statute, with its "grave sanction of dismissal" (*ibid.*), calls for the same "sensitive evaluation of the nature and seriousness of the misconduct" (*ibid.*) that the opinion recognizes is appropriate in other contexts. As virtually all of the prior AWOL cases reveal, the question whether an employee's absence was "with" or "without leave" often turns on disputed factual questions with regard to the content of conversations between employees and supervisors or with regard to established agency policies or practices. (See, e.g., *Allen* v. *Department of Personnel Administration* (1987) 193 Cal.App.3d 355, 357-359 [238 Cal.Rptr. 317]; *Harris* v. *State Personnel Bd.* (1985) 170 Cal.App.3d 639, 641-642 [216 Cal.Rptr. 274]; *Goggin* v. *State Personnel Bd.* (1984) 156 Cal.App.3d 96, 103-104 [202 Cal.Rptr. 587]; *Zike* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 817, 820-821 [193 Cal.Rptr. 766]; *Curia* v. *Civil Service Com., supra,* 126 Cal.App.3d 994, 996-1002.) Indeed, the present case is fairly typical in this regard: the employee here testified that he had never been informed, and did not know, that the initial leave that had been granted to him for an acknowledged illness had been terminated, while his supervisor—though acknowledging that he had never explicitly told the employee to return to work—maintained that the employee should have understood that he was required to do so.

In fact, it is evident that the Legislature recognizes that the question whether or not an employee was absent without leave may give rise to factual disputes, since the AWOL statute itself provides for a posttermination reinstatement hearing in which such factual disputes can be raised and resolved by a neutral decision maker.[1] Indeed, because the Legislature has

---

[1] As the majority opinion acknowledges (see maj. opn., *ante,* pp. 1108, 1111), however, the reinstatement procedure embodied in the AWOL statute does not itself satisfy the constitutional due process requirements of a posttermination hearing under *Loudermill, supra,* 470 U.S. 532, and *Skelly, supra,* 15 Cal.3d 194, because the statutorily authorized procedure (1) is directed at determining the propriety of reinstatement rather than the validity of the termination, (2) places the burden of proof on the employee, rather than on the employer, and (3) specifically bars the employee from obtaining backpay for the period prior to reinstatement

already established the basic administrative apparatus for a posttermination hearing in AWOL matters, the principal administrative argument that is usually raised against providing a posttermination hearing is nonexistent here. Since a hearing will, in any event, be held in any case in which an employee disputes the propriety of an AWOL termination and seeks reinstatement, there is no substantial increased burden in requiring the employer, rather than the employee, to prove the validity of the termination at the hearing.

In addition to relying on the alleged simplicity of the facts underlying all AWOL terminations as a basis for finding that a posttermination hearing is not required, the majority opinion also suggests that a posttermination hearing is not required in this context because a resignation under the AWOL statute, unlike a disciplinary dismissal, "carries no stigma" and "does not seriously damage an employee's standing and associations in the community, [or] foreclose other employment opportunities." (See maj. opn., *ante*, p. 1120) In my view, this rationale is untenable on two separate grounds.

First, although there may be no stigma attached to an employee's departure from a job when the employee voluntarily resigns from his or her employment, it is unrealistic to suggest that the same is true when an employee's employment is terminated by the employer on the grounds that the employee was absent without leave. A subsequent employer would certainly view a forced "resignation" under the AWOL statute quite differently than a voluntary resignation, and would surely place a negative connotation on the fact that the employee had left his or her prior job without giving the employer any notice of the intended departure. Thus, unlike a voluntary resignation, an "automatic resignation" pursuant to the AWOL statute both "carries a stigma" and is likely to "foreclose other employment opportunities."

Second, even if a termination of employment is not stigmatizing, an employee is still entitled to fully adequate procedural protections when the state acts to deprive him or her of his or her *property* right in continued employment. The past cases that have focused on the "stigmatizing" nature of particular terminations have relied on that factor to explain that even when an employee *does not* have a property right in continued employment—for example, when he or she is a temporary employee—the employee may still have a right to some form of hearing under the due process clause if the termination is stigmatizing and thus impinges on the employ-

---

even if the employee demonstrates that termination was not warranted under the AWOL statute.

ee's liberty interests. (See, e.g., *Board of Regents* v. *Roth* (1972) 408 U.S. 564, 573 [33 L.Ed.2d 548, 558-559, 92 S.Ct. 2701].) I am aware of no case, however, that suggests that when, as here, an employee *does* have a property right in continued employment, the fact that a particular termination may not be sufficiently stigmatizing to constitute a deprivation of liberty as well as a deprivation of property justifies watering down the procedural rights to which the employee is entitled by virtue of the extinguishment of his or her property right.[2]

Accordingly, I believe the majority opinion has erred in concluding that a state may constitutionally deprive an employee, who has been terminated under the AWOL statute, of any posttermination hearing whatsoever. As the opinion recognizes, under the controlling decisions of the United States Supreme Court and this court, employees who are accused of committing conduct much more serious than the conduct encompassed by the AWOL statute—for example, stealing public property or repeatedly being drunk on the job—are constitutionally entitled to the procedural protection of a post-termination hearing at which the employer bears the burden of proving the accuracy of the charges against the employee. In my view, there is no justification for denying a similar protection to a permanent employee who has lost a job because the state believes he or she has been absent without leave for five days.

**ARABIAN, J.,** Concurring and Dissenting.—I concur in the majority holding that due process is not offended by enabling the state conclusively to deem an unauthorized five-day absence to be an employee-initiated severance of employment. I must respectfully dissent, however, from the conclusion that either the federal or state Constitution requires individualized notice and an opportunity for the resigned employee to respond prior to invocation of Government Code section 19996.2, subdivision (a).[1] I am unconvinced, as was the Court of Appeal below, that these requirements

---

[2] In the same vein, and contrary to the majority opinion's suggestion (see maj. opn., *ante*, pp. 1120-1121), the fact that an AWOL termination may not have as severe consequences as a dismissal for cause with respect to the employee's ability to obtain a *future* civil service position, cannot justify the withholding of the minimum procedural protections required by *Loudermill, supra*, 470 U.S. 532. As *Loudermill* makes clear, those protections are required by the due process clause because the state is acting to deprive the employee of a constitutionally protected property interest in continued employment in his or her current position. The fact that an employee who is terminated under the AWOL statute may enjoy the theoretical possibility of securing public employment some time in the future does not provide any basis for diminishing the scope of his or her procedural rights with regard to his or her present employment.

[1] All further statutory references are to the Government Code unless otherwise specified. For convenience, Government Code section 19996.2, subdivision (a), will be referred to as section 19996.2(a).

will significantly reduce the possibility of an erroneous application of the statute.

" 'What is due process depends on circumstances. It varies with the subject matter and the necessities of the situation. [Citation.] Its content is a function of many variables, including the nature of the right affected . . . and the availability of prompt remedial measures.' " (*Thorn* v. *Superior Court* (1970) 1 Cal.3d 666, 673 [83 Cal.Rptr. 600, 464 P.2d 56]; see *Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [33 L.Ed.2d 484, 494, 92 S.Ct. 2593].) In my view, the statutory scheme, including existing administrative grievance and review procedures, adequately protects a state employee's interests when his or her unexcused absence is deemed an automatic resignation. To mandate that further process is due exceeds any justifiable constitutional expectations.

Among the "many variables" relevant to this situation are the substantiality of the state's interest and the reasonable implementation thereof. However commendable in the abstract the view that "every citizen who applies for a government job is entitled to it unless the government can establish some reason for denying the employment" (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 588 [33 L.Ed.2d 548, 567, 92 S.Ct. 2701], dis. opn. of Marshall, J.), the reality is we are living in an era of reduced expectations to which government employment has fallen a perennial victim. The State of California employs thousands of individuals to perform a multitude of vital functions and must do so each year with an ever-dwindling budget.[2] These fiscal constraints require the maximization of all available resources, including the productivity of its work force.

Section 19996.2(a) constitutes an appropriate legislative effort to assist the state in implementing its mandate to maintain the orderly operation of government. It is eminently rational and reasonable to construe an unapproved five-day absence to be a resignation by conduct equivalent in effect to a resignation by written or verbal communication.[3] Whether by abandonment or express withdrawal, such separation from service is, by definition, employee initiated. I find no basis in logic or constitutional imperative for

---

[2] In fiscal 1989-1990, the State of California employed an estimated 260,434 persons in various capacities. (Cal. Statistical Abstract (1990) table C-5, p. 23.)

[3] When viewed from this perspective, the statute clearly draws a reasoned distinction between this type of situation and one in which an employee would be subject to discipline for chronic absenteeism (§ 19572, subd. (j)): Unauthorized absence for a full work week raises a logical inference the individual has abandoned his or her employment, whereas absence even for a longer total time but fewer consecutive days may not. Moreover, the import of the statutory scheme is that a separation from state employment pursuant to section 19996.2(a) is not a termination for cause because the Legislature has chosen to define it as a type of resignation, which I conclude is within its constitutional prerogative and authority. (See fn. 4, *post*.)

requiring preseparation notice and opportunity to be heard when it assumes the form designated by section 19996.2(a).

Support for this conclusion derives as well from the essential nature of the statute itself, which delineates the *substance* of the property interest at issue, not the *procedure* for its acquisition, retention, or termination. (See *Cleveland Board of Education* v. *Loudermill* (1985) 470 U.S. 532, 538 [84 L.Ed.2d 494, 501, 105 S.Ct. 1487] ["Property interests . . . 'are created and their dimensions are defined by . . . an independent source such as state law . . . .' [Citations.]"].) Even if the state has created an interest in continued employment (see § 19996; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774]), it has concomitantly conditioned it on the employee's continued conformance to specified, objectively ascertainable terms.[4] (See *Texaco, Inc.* v. *Short* (1982) 454 U.S. 516, 526 [70 L.Ed.2d 738, 748-749, 102 S.Ct. 781].)

Authority to define a property interest according to state law necessarily contemplates the ability to restrict or qualify it as the Legislature reasonably deems appropriate to its purpose. (*Texaco, Inc.* v. *Short, supra*, 454 U.S. at p. 526 [70 L.Ed.2d at pp. 748-749]; see also, e.g., *Mackey* v. *Montrym* (1979) 443 U.S. 1 [61 L.Ed.2d 321, 99 S.Ct. 2612] [state may summarily suspend driver's license for refusal to take breath-analysis test]; *Oregon State Penitentiary* v. *Hammer* (1977) 434 U.S. 945 [54 L.Ed.2d 306, 98 S.Ct. 469] [judgment vacated and remanded for reconsideration in light of *Dixon* v. *Love* (1977) 431 U.S. 105 [52 L.Ed.2d 172, 97 S.Ct. 1723], after state court reversed termination of tenured employee discharged without pretermination hearing]; *Dixon* v. *Love, supra*, 431 U.S. 105 [state may automatically suspend or revoke driver's license after specified number of traffic violations]; *Weinberger* v. *Salfi* (1975) 422 U.S. 749 [45 L.Ed.2d 522, 95 S.Ct. 2457] [minimum duration of marriage may be condition precedent to widow's and stepchildren's entitlement to Social Security benefits].) Moreover, whether some other means of addressing the problem would have been "wiser or more practical" is not an appropriate judicial inquiry in evaluating this kind of legislative enactment, i.e., one which does not implicate fundamental rights or create invidious classifications. (*Usery* v. *Turner Elkhorn Mining Co.* (1976) 428 U.S. 1, 18-19 [49 L.Ed.2d 752, 767-769, 96 S.Ct. 2882].)

The majority commensurately conclude section 19996.2(a) satisfies substantive imperatives. Nevertheless, they would traverse these legislative pre-

---

[4]The definitional function of section 19996.2(a) serves to complement and give dimension to the language of section 19996, which in part states: "The tenure of every permanent employee holding a position is during good behavior. Any such employee may be . . . permanently separated through resignation or removal for cause . . . ."

rogatives and judicially impose an additional complement of procedural due process. Prior notice and hearing, however, are neither the sine qua non nor a universal mandate of constitutionally adequate procedure. (See *Dixon* v. *Love, supra*, 431 U.S. at p. 115 [52 L.Ed.2d at pp. 181-182]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893]; see also *United States* v. *Locke* (1985) 471 U.S. 84, 108-109 [85 L.Ed.2d 64, 84-86, 105 S.Ct. 1785]; *Texaco, Inc.* v. *Short, supra*, 454 U.S. at pp. 533-535 [70 L.Ed.2d at pp. 753-755]; see also *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552, 564 [150 Cal.Rptr. 129, 586 P.2d 162]; *Willson* v. *State Personnel Bd.* (1980) 113 Cal.App.3d 312, 315-317 [169 Cal.Rptr. 823].)

In this case, the statute itself sufficiently alerts state employees that their employer has the authority to deem an unauthorized five-day absence an automatic resignation. I see no reason not to hold these individuals to the same expectation regarding the terms of their employment as a property owner "charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." (*Texaco, Inc.* v. *Short, supra*, 454 U.S. at p. 532 [70 L.Ed.2d at p. 752], fn. omitted; see also *Atkins* v. *Parker* (1985) 472 U.S. 115, 131 [86 L.Ed.2d 81, 94, 105 S.Ct. 2520] ["The entire structure of our democratic government rests on the premise that the individual citizen is capable of informing himself about the particular policies that affect his destiny."].) This law has served the state in one form or another since 1945 and may justifiably constitute a fixture of public employment. (See also *Phillips* v. *State Personnel Bd.* (1986) 184 Cal.App.3d 651 [229 Cal.Rptr. 502] [similar provision in Ed. Code, § 89541, as well as state university employee's collective bargaining agreement]; *Curia* v. *Civil Service Com.* (1981) 126 Cal.App.3d 994 [179 Cal.Rptr. 476] [similar county civil service rule]; *Baker* v. *Wadsworth* (1970) 6 Cal.App.3d 253 [85 Cal.Rptr. 880] [similar local civil service rule].) No further notice should be necessary.

Available statutory and administrative review procedures also afford constitutionally adequate opportunity to be heard. The California Code of Regulations expressly provides for both formal and informal leaves of absence, detailing the conditions and circumstances under which they are to be granted.[5] (Cal. Code Regs., tit. 2, § 599.781 et seq.) If a request for leave otherwise within the scope of these provisions is denied, California Code of

---

[5] For example, California Code of Regulations, title 2, section 599.785, provides: "Informal Leave of Absence (Dock). [¶] The appointing power may grant an informal leave of absence without pay for a period not to exceed 11 working days in a 22-day pay period or 10 working days in a 21-day pay period or 11 consecutive working days between pay periods. A holiday is counted as a working day. The appointing power shall not grant paid absences to break the continuity of a leave of absence without pay."

Regulations title 2, section 599.859, sets forth a grievance procedure for the purpose of resolving "a dispute of one or more employees involving the application or interpretation of a statute, regulation, policy or practice which falls under the jurisdiction of the department."

Thus, an employee is both able to determine whether a particular leave request can be authorized and protest an assertedly improper denial of that request, all before the automatic resignation provisions of section 19996.2(a) become operative. Only the employee's failure to pursue proper administrative adjudication of his or her claim creates the possibility of an unauthorized leave and the risk of a deemed resignation. In addition, both the California Code of Regulations and the statute itself provide for a postseparation hearing at which the employee may explain the circumstances of the absence and challenge the automatic resignation or accept it and seek reinstatement.

In my estimation, this range of procedures suffices "to minimize the risk of erroneous decisions [citations] . . . ." (*Mackey* v. *Montrym, supra*, 443 U.S. at p. 13 [61 L.Ed.2d at p. 331].) The majority conclude otherwise based upon a misidentification of the "erroneous decision" against which they seek to interpose due process protections. The state may invoke section 19996.2(a) only upon confirming the employee's unauthorized absence for the designated period. As in *Mackey* v. *Montrym, supra*, the relevant determination rests on "objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him." (443 U.S. at p. 13 [61 L.Ed.2d at p. 331].) This is not a discretionary assessment subject to arbitrary application; nothing in the statute itself nor on the record before us suggests to the contrary.

The possibility that authorization may have been improperly withheld is an antecedent and collateral question, which can and should be resolved by the employee through available administrative procedures before an absence exceeds five days. Furthermore, through either the postseparation hearing expressly afforded by section 19996.2(a) or the administrative appeal process, an employee may establish a mistaken understanding as to authorization upon which to premise a claim of estoppel or waiver (and presumably avoid the interim loss of pay). (See *United States* v. *Locke, supra*, 471 U.S. at pp. 110-112 [85 L.Ed.2d at pp. 86-88], conc. opn. of O'Connor, J; see also *Zike* v. *State Personnel Bd.* (1983) 145 Cal.App.3d 817 [193 Cal.Rptr. 766].) However, such contentions are as well collateral to the objective determination of whether the record on its face shows facts supporting a deemed automatic resignation. (Cf. *Mackey* v. *Montrym, supra*, 443 U.S. at pp. 14-15 [61 L.Ed.2d at pp. 332-333] [rejecting driver's attempt to avoid automatic suspension of license for refusal to take breath-analysis test because constitutional objection was based on independent question of law].)

In taking favorable measure of this statute's constitutional integrity, I am persuaded by the following observations of the United States Supreme Court: "[T]he Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error. The Due Process Clause simply does not mandate that all governmental decisionmaking comply with standards that assure perfect, error-free determinations. [Citation.]" (*Mackey* v. *Montrym, supra*, 443 U.S. at p. 13 [61 L.Ed.2d at p. 331].) "[E]ven when disputes as to the historical facts do arise, we are not persuaded that the risk of error inherent in the statute's initial reliance on the representations of the reporting officer is so substantial in itself as to require that the Commonwealth stay its hand pending the outcome of any evidentiary hearing necessary to resolve questions of credibility or conflicts in the evidence." (*Id.*, at p. 15 [61 L.Ed.2d at p. 333].)

As this case illustrates, the invocation of section 19996.2(a) depends upon a determination of objectively verifiable historical facts. The undisputed record establishes that employee Coleman, a technician with one and one-half years' state service, made no attempt to obtain leave authorization following the termination of his nonindustrial disability benefits. After a full month, the state deemed his unexcused absence from work an automatic resignation. Coleman was denied reinstatement when he failed to substantiate at his postseparation hearing that he had a valid reason for not returning or that he was "ready, able, and willing" to resume his duties. On these facts, the majority find a misstep in the minuet of management. I do not.